SALEM LODGE NO. 21, FREE AND ACCEPTED MASONS
v. SWAILS, EXR.

[No. 26,233. Filed October 25, 1935. Rehearing denied January 7, 1936.]

348

*James G. Berkey* and *Albert W. Phillips,* for appellant.

*Oren O. Swails,* for appellee.

TREANOR, C. J.—On November 7, 1921, Estella B. Prince received from the Mutual Life Insurance Company a fifteen-year endowment policy, for which she had made application, upon her life, payable to herself if living on November 7, 1936, and in the event of her death prior to said date, payable to her mother, Mary Boling. The absolute right to change the beneficiary was reserved in the policy by the insured. On July 18, 1924, there was attached to the policy, at the direction and request of Estella B. Prince, an endorsement containing the following change of beneficiary:

> "If said payee shall not survive the insured, the amount payable at the death of the insured shall be payable to Salem Lodge No. 21, Free and Accepted Masons of Salem, Indiana."

Mary Boling died February 18, 1925, and Estella B. Prince died August 16, 1929.

The Mutual Life Insurance Company paid the amount due under the policy into court and filed a petition for interpleader. Judgment was rendered releasing and discharging the petitioner and the appellant and appellee were ordered to interplead. The appellee filed a cross-complaint against the appellant, setting up, in substance, the foregoing facts, alleging that appellant had

no insurable interest in the life of Estella B. Prince and was not related to said Estella B. Prince, and asking for judgment in his favor. Appellant's demurrer to this cross-complaint was overruled. That ruling is assigned as error and its determination is decisive of this appeal. The issue presented by appellee's cross-complaint and the demurrer thereto is whether the appellant Lodge, having no pecuniary interest in the life of Estella B. Prince, and not being related to her, is entitled to the proceeds of the policy of insurance on her life taken out by Estella B. Prince and made payable to a beneficiary related to the insured, by virtue of the subsequently executed change of beneficiary.

At the time the policy was issued, and at the time the above quoted change of beneficiary was made, the following statutory provision was in effect in this State:

"It shall be unlawful for any person, firm, or agency corporation to take or receive any application for any insurance upon the life of any person in the State of Indiana unless the beneficiary to be named in such policy shall have a bona fide insurable interest, in whole or in part, in the life of such insured, or unless the beneficiary to be named in such policy is related to the person insured in the degree of kinship not further removed than first cousin.

"It shall further be unlawful for any person or firm, knowingly, or for any corporation, with the knowledge of any officer thereof, to write any policy of insurance on the life of any individual in the State of Indiana unless the beneficiary named in such policy shall have a bona fide insurable interest, in whole or in part, in the life of such insured, or unless the beneficiary named in such policy is related to the person insured in the degree of kinship not further removed than first cousin.

"Any person violating any of the provisions of this act shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined . . .

"Any corporation violating any of the provisions of this act shall be fined in any sum not less than

one hundred dollars ($100) nor more than one thousand dollars ($1,000) and upon conviction of a second offense, if a corporation organized under the laws of the State of Indiana, the attorney-general shall institute quo warranto proceedings for the forfeiture of its charter, and if a foreign corporation, its license to do business in Indiana shall be revoked."[1]

There is no question that the policy as issued on November 7, 1921, wherein the beneficiary bore the degree of relationship permitted by the statute, was a valid and enforceable contract of insurance. But it is urged that the endorsement of the policy made on July 18, 1924, designating the appellant as an alternative beneficiary, was invalid and void as having been made in violation of the above quoted statute.

Prior to the enactment of the statute in question it was the law in Indiana that a contract of insurance entered into by any person upon his own life, naming whomsoever he pleased as beneficiary, was valid, if the transaction was not a scheme to obtain speculative insurance;[2] but it was held to be contrary to public policy for one to enter into a contract of insurance in his own favor on the life of another, unless the former had an insurable interest in the life of the latter.[3] But the factor which determined whether the contract of insur-

---

1. Acts 1901, ch. 174, p. 374; Acts 1913, ch. 247, p. 686; Acts 1921, ch. 74, p. 159; Acts 1925, ch. 40, p. 120; §9033, Burns Ann. Ind. St. 1926.

2. "The cases which hold invalid the taking or assignment of insurance policies turn upon the fact that in each case the transaction was found to be merely colorable, and a scheme to obtain speculative insurance. . . . This court is still of the opinion that such a transaction (where the person taking the assignment had engaged in a speculation as to the length of time that the person whose life was insured would continue in life) is quite as obnoxious to public policy as where a third person, without an insurable interest, effects an insurance for his own benefit upon the life of another. But there can be no objection to a third person taking an assignment of a life insurance policy that another has taken out upon his own life where the insured has covenanted with the insurance company to pay the premiums." *Davis* v. *Brown* (1903), 159 Ind. 644, 647, 65 N. E. 908.

3. *Amick* v. *Butler* (1887), 111 Ind. 578, 12 N. E. 518, 60 Am. Rep. 722; *Davis* v. *Brown, supra.*

ance was obnoxious to public policy was "the activity and responsibility of the insured, and not the interest of the person entitled to the fund." (2 May on Insurance, 4th ed., §398a.) Such contracts came to be considered against public policy for two reasons: (1) Such contracts are incentives to crime, i.e., there is an interest on the part of the insured, who is himself a beneficiary, to hasten the death of the one whose life is the subject of the insurance; and (2) such contracts are speculative or wagering contracts.

The foregoing considerations do not apply when the insured contracts for insurance upon his own life. There is little likelihood that such a contract will prove to be an incentive to crime because the person upon whose death the contract matures is free to choose a beneficiary in whom he has confidence. There is a selection of the beneficiary by the one who contracts for insurance upon his own life rather than a selection of one, whose life is the "risk," by the beneficiary or by the insured who contracts for the insurance. And there is no valid objection on the ground of lack of insurable interest.[4] This court has said that "it cannot be questioned that a person has an insurable interest in his own life, and that he may effect such insurance, and appoint anyone to receive the money in case of his death during the existence of such policy."[5] Consequently, apart from statutory prohibition, it cannot be unlawful for an insurer to enter into a good faith contract of insurance upon the life of the insured, regard-

4. "A person may, of his own accord, effect a valid insurance upon his own life, pay the premium himself, and make the policy payable upon his death to a third party who has no insurable interest in his life, or, in other words, one may insure his own life and pay the premiums himself for the benefit of another who has no insurable interest and this is not a wager; provided, the transaction is bona fide, without collusion, not intended to circumvent the law, and not speculative nor a mere cover for a wager." 2 Joyce on Insurance, §894b, pp. 1937-38.

5. *The Provident Life, etc., Company* v. *Baum* (1867), 29 Ind. 236, 240.

less of the insurable interest of the named beneficiary or of his kinship to the insured. Such a contract, in and of itself, cannot be obnoxious to public policy in a jurisdiction whose public policy is not offended by indiscriminate creation of remainders after life estate or of other interests whose vesting or enjoyment is contingent upon the termination of a life. The law must recognize the reality that a life insurance contract is an investment of pecuniary value with characteristics of property and not a contract of indemnity.[6] In the business world a contract of life insurance is recognized as creating a present estate, and there is no legal obstacle to judicial acceptance of this business fact.

The statute involved in this appeal ignores the foregoing and outlaws all contracts of an insured upon his own life which provide for a beneficiary who does not have an insurable interest "in the life of the insured" or bear a certain kinship relation to him. No distinction is made between a good faith contract for the benefit of another entered into by an insured upon his own life, the insured covenanting to pay the premium, and a contract in which the insured is merely a nominal party whose life and name are used by another to cover a scheme to obtain speculative insurance. The latter contract is as much a wagering contract as a policy which is taken out by one upon the life of another when the insured has no insurable interest in the life of the latter, and has been considered

---

6. "The contract commonly called life assurance, when properly considered, is a mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of a certain annuity for his life—the amount of the annuity being calculated in the first instance, according to the probable duration of the life; and, when once fixed, it is constant and invariable. The stipulated amount of annuity is to be uniformly paid on one side, and the sum to be paid in the event of death is always (except when bonuses have been given by prosperous offices) the same on the other. This species of insurance in no way resembles a contract of indemnity." *Dalby* v. *India, etc., Life Assurance Co.* (1854), 15 C. B. 365, 80 E. C. L. 364, 386.

equally violative of public policy. But there seems to be no factual basis for holding that public policy is violated by a good faith contract of insurance obtained by the insured upon his own life for the benefit of any person of the insured's choice. It can be urged, however, with considerable plausibility that the absense of any restrictions on the selection of beneficiaries encourages collusive arrangements whereby speculative insurance may be obtained. There is always the possibility that self-selected beneficiaries may initiate the procuring of policies as a cloak to a wagering transaction wherein the named beneficiary is the actual procurer of the insurance which is taken out in the name, and on the life, of the insured. The statute in question, whereby the validity of a policy taken out by one upon his own life was made to depend upon the interest or relationship of the beneficiary, was designed to discourage such transactions and, presumably, was enacted in aid of the recognized public policy of preventing wagering transactions. The effect of the statute is to prohibit good faith transactions, which are in no sense a violation of public policy; but the General Assembly has the power to restrict transactions which are not of themselves obnoxious to public policy when they bear such an intimate relation to transactions which necessarily do violate public policy that the latter cannot be effectively curbed while the former are unrestricted.

In view of the foregoing it is the opinion of the court that the statute in question represents a valid exercise of legislative power. But the appellant contends that even if it is constitutional its prohibitions do not affect the validity of a change of beneficiary under a valid contract, even though the new beneficiary does not meet the insurable interest or kinship requirements of the statute. Appellee, on the other hand, insists that "the

intent of the law was to prevent any person not related to the insured and without insurable interest from *carrying insurance* or *benefiting* from insurance on the life·of another, and under the rules of construction an attempt to change the beneficiary and thus accomplish indirectly what is prohibited to be done directly, is likewise against the law." (Our italics.)

The language of §9033, *supra,* inhibits the taking or receiving of any application for insurance or the writing of any policy of insurance if the beneficiary does not have an insurable interest in the life of the insured or is not within the required degree of kinship. It is significant that the statutory restrictions are upon the insurers and their agents and extend only to the acts of taking or receiving applications and of writing policies. No provision purports to restrict the right of the insured, who has procured a valid policy upon his own life, to assign the policy or to change the beneficiary. As a matter of language construction we cannot imply any such restrictions upon the insured. Evidently the General Assembly believed that the public policy against wagering contracts would be safeguarded sufficiently by prohibiting insurers and their agents from participating in the execution of contracts of insurance unless such contracts, when executed, would provide for a beneficiary who possessed an insurable interest in the life of the insured, or came within the statutory degree of kinship. And since the statute does not purport to restrict the right of an insured to change the beneficiary or assign his beneficial interest in the contract we cannot add any such restriction as a matter of policy. We must assume, in the absence of any provision to the contrary, that the General Assembly did not intend to destroy or impair the value and usefulness of insurance estates, by restricting the right of an insured, whose life is the

subject of the insurance, to transfer either by assignment or by gift through change of beneficiary, the insurance estate which the insured has created and is enhancing by money payments from his own assets.

We conclude that the restrictive provisions of the statute cannot be extended by construction to apply to a change of beneficiary made in accordance with the terms of an existing contract of insurance. This does not result, as contended by appellee, in permitting something to be done indirectly which "is prohibited to be done directly." The immediate object of the statute is to prevent the taking or receiving of applications for, and the writing of, policies of insurance by insurers or their agents unless the beneficiary has an insurable interest in the life of the insured or possesses the statutory degree of kinship. The ultimate purpose is to prevent the making of wagering contracts of insurance. If a beneficiary without insurable interest in the life of the insured and without the statutory degree of kinship should be substituted for the original beneficiary, who possessed the statutory requirements, the change being made in pursuance of a collusive agreement to enable the insured to obtain a contract of insurance for the benefit of the substituted beneficiary, and thereby evade the statute, we should have an attempt to do indirectly what the statute prohibits to be done directly. But in the case at bar there is no suggestion that the change of beneficiary, which was made nearly three years after the execution of the contract of insurance, was made for the purpose of evading the prohibitions of the statute.

We hold that a change of beneficiary, as made in the instant case, does not come within the scope of the statute. Consequently the trial court erred in overruling appellant's demurrer to appellee's cross-complaint.

The judgment of the trial court is reversed and the

cause is remanded with directions to sustain appellant's demurrer to appellee's cross-complaint and for further proceedings not inconsistent with this opinion.