In re the ESTATE OF Dora
W. POWERS.

In re the Guardianship of
Dora W. Powers.

Harvey J. Powers, Jean Powers, and
Winifred Williams, Appellants,

v.

John F. Powers, Appellee.

No. 75A03–0511–CV–537.

Court of Appeals of Indiana.

July 5, 2006.

Shane C. Mulholland, Emily S. Patterson, Burt, Blee, Dixon, Sutton, & Bloom,

LLP, Fort Wayne, IN, Attorneys for Appellants.

James A. Masters, Nemeth, Feeney & Masters, P.C., South Bend, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Petitioners, Jean Powers (Jean), Harvey Powers (Harvey), and Winifred Williams (Winifred) (collectively, the Appellants), appeal the trial court's determination that Appellee–Respondent, John Powers (John), has an insurable interest in the life of his mother, Dora Powers (the Decedent).

We affirm.

### ISSUE

The Appellants raise one issue on appeal, which we restate as: Whether the trial court erred in determining that John, a licensed insurance agent, had an insurable interest in the life of the Decedent, his mother, and thus is the legal beneficiary of three annuity policies he sold to the Decedent in his capacity of insurance producer.

### FACTS AND PROCEDURAL HISTORY

This appeal arises out of two separate causes of action concerning the guardianship and estate of the Decedent. The Decedent and her husband had four children: John, Jean, Harvey, and Winifred. Upon the death of her husband in 1986, the Decedent, then eighty years old, moved from California to Indiana to be closer to her son, John, and his family. Also, shortly after the death of her husband, the Decedent executed her Last Will and Testament (the Will), devising all of her assets equally amongst her four children.

Being financially unsophisticated, the Decedent relied on John to handle the sum of money she received from her husband's estate, as well as other financial matters. Following the execution of the Will, specifically between 1986 and 1996, John sold the Decedent three annuity policies, two of which he was named the sole beneficiary of, and one of which he and his wife, Carol Powers (Carol), were joint beneficiaries. John, a licensed insurance agent for many years, received a three-to-four percent commission on the sale of each of the annuity policies to the Decedent, his mother.

In particular, in August of 1986, John sold the Decedent an American Investors Life Annuity Policy. While the parties are in dispute as to whether John or the Decedent's Estate (the Estate) was the original beneficiary on this policy, it is clear that when the policy was cashed out and used to purchase a new policy from Financial Benefit Life Insurance (the Financial Benefit Policy) in February of 1996, John was named the sole beneficiary, and Carol was named the contingent beneficiary. The death benefit on this policy is $126,420.00, and upon conversion, John received another commission on the converted policy's premium.[1]

Also in 1986, John sold the Decedent a policy from Guarantee Security Life Insurance Company, later acquired by Midland National Life (the Midland Policy). Although the Estate was originally named as the beneficiary, on February 17, 1993, a Policy Owner's Change and Service Re-

---

1. Each death benefit amount quoted in this opinion is taken from the Accounting for the Guardianship of Dora Powers from December 29, 1998 through December 31, 2001, located on pp. 34–41 of the Appellant's Appendix.

quest was completed, changing the beneficiary of the Midland Policy to John as the primary beneficiary, and Carol as the contingent beneficiary. Then, in 1998, John, who by this time had been appointed the Decedent's guardian, converted the Midland Policy to an American Investors Life Policy (the American Investors Policy), with the same beneficiary designations as the Midland Policy, and a death benefit of $145,167.25. By the time the Midland Policy was converted in 1998, the Decedent lived in a nursing home facility and John handled all of her finances.

Additionally, in 1994, John sold the Decedent a third annuity from the Columbia Mutual Life Insurance Company, that was later converted to the United Teachers Associates Insurance Company (United Teachers Policy). On this policy, John and his wife were designated joint beneficiaries, and its death benefit is $36,150.48.

On July 23, 1996, John petitioned for guardianship of the Decedent's person and property. In support of his petition, John stated that the Decedent required care and supervision because she suffered from old age, infirmity, dementia, and paranoia. In addition, John submitted a letter written by the Decedent's physician, stating that the Decedent's memory impairment and paranoid ideation made her incompetent to manage her own affairs, including her health care. On August 19, 1996, John was appointed the Decedent's guardian. As the Decedent's guardian, John filed an Inventory of the Decedent's assets on September 26, 1996, and an Amended Inventory on February 4, 1998. In addition, in his guardian capacity, John filed an interim accounting on July 17, 2002, accounting for the Decedent's assets from December 29, 1998 through December 31, 2001. On November 28, 2002, the Decedent passed away.

Approximately four months after the Decedent's death, on March 3, 2003, John filed a Guardian's Final Report, and a Petition to Terminate Guardianship and for Guardian's and Attorney's Fees. On March 4, 2003, Carol was appointed personal representative of the Estate. On March 14, 2003, John's siblings—Jean, Harvey, and Winifred—filed an objection to John's Final Report. On August 4, 2004, the Appellants filed a motion requesting the Estate to file claims, and a petition to remove Carol as the personal representative of the Estate. On June 1 and 2, 2005, the trial court held a hearing on both the guardianship and Estate matters. As a result, on October 4, 2005, the trial court issued, in part, the following findings and conclusions of law:

4. It has been established by a preponderance of the evidence that:

A) [John's] actions as guardian of [the Estate], whether in a de jure or de facto capacity, did not result in, give rise to, or otherwise constitute a conflict of interest, including but not limited to his administration of the three annuity policies at issue;

B) [F]raud, undue influence and duress did not exist in the relationship between [John] and [the Decedent], nor does a presumption of fraud, undue influence, or duress exist in the evidence regarding the annuity policies.

C) [John] did not violate insurance laws and held an insurable interest in the life of [the Decedent][;]

D) The change in beneficiary designation effectuated by [the Decedent] concerning the [Midland Policy] annuity was validly executed;

E) Both the guardian's fees and attorney's fees requested in conjunction with the Guardian's Final Report filed March 4, 2003, are valid and reasonable and should be approved.

5. The Guardian's Final Report, Petition to Terminate Guardianship, and for Guardian's and Attorney's Fees should be approved.

6. The preponderance of the evidence does not support the conclusion that [Carol] should be removed as personal representative of [the Estate], the claim that a special administrator should be appointed, or that the Personal Representative should be ordered to pursue a claim on behalf of [the Estate].

7. Those claims for relief sought by [the Appellants] should be denied.

8. The motion for sanctions previously held under advisement should be denied.

(Appellant's App. pp. 8–9).

The Appellants now appeal. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

The Appellants argue that the trial court erred in concluding that John had an insurable interest in the life of the Decedent. Specifically, the Appellants contend that it was contrary to law for John to sell the annuity policies to the Decedent in his capacity as insurance agent, and be named the beneficiary of those policies, without an insurable interest in the life of the Decedent.

#### I. *Standard of Review*

In this case, the trial court *sua sponte* entered findings of fact and conclusions of law. When the trial court enters such findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issues upon which the court has not found. *Harris v. Harris*, 800 N.E.2d 930, 934 (Ind.Ct.App.2003), *trans. denied.* Therefore, in reviewing this judgment, we must apply a two-tiered standard. *Id.* at 934–35. First, we determine whether the evidence supports the findings

and second, whether the findings support the judgment. *Id.* In deference to the trial court's proximity to the issues, we will reverse a judgment only when it is shown to be clearly erroneous, *"i.e.,* when the judgment is unsupported by the findings of fact and conclusions entered on the findings." *Id.; Scoleri v. Scoleri,* 766 N.E.2d 1211, 1215 (Ind.Ct.App.2002).

For findings of fact to be clearly erroneous, the record must lack probative evidence or reasonable inferences from the evidence to support them. *Scoleri,* 766 N.E.2d at 1215. In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. *Id.* However, even though we defer substantially to the trial court's findings of fact, we do not do so as to its conclusions of law. *Harris,* 800 N.E.2d at 935. Rather, we evaluate questions of law *de novo* and owe no deference to a trial court's determinations of such questions. *Id.*

#### II. *Insurable Interest*

##### A. *An Overview of the Arguments*

In generally arguing that the trial court erred in determining that John had an insurable interest in the life of the Decedent, the Appellants first direct our attention to Ind.Code § 27–1–15.6–31, which provides that an insurance producer cannot be named a beneficiary of an individual life insurance policy unless the producer has an insurable interest in the life of the insured or annuitant. Thus, the Appellants assert that John, a licensed insurance agent who produced the three aforementioned annuities for the Decedent, could not legally be named the beneficiary thereon because he had no insurable interest in

the life of the Decedent. Specifically, the Appellants contend that in order for a person to have an insurable interest in the life of an insured, the person must be faced with the threat of an economic loss in the event that the insured dies. Accordingly, here, the Appellants argue that John had no economic interest in the life of the Decedent, and consequently no insurable interest in her life.

On the other hand, John argues that the Appellants cannot rely on I.C. § 27–1–15.6–31, as it was not in effect when he sold any of the annuity policies to the Decedent.[2] Additionally, irrespective of the statute's application, John asserts that he had an insurable interest in the life of the Decedent, his mother. Specifically, John contends that Indiana law recognizes an insurable interest premised on either a pecuniary or a blood relationship between the parties.

■ We agree with John that the general rule is that unless there are strong and compelling reasons, statutes will not be applied retroactively. *Bourbon Mini-Mart, Inc. v. Gast Fuel and Services, Inc.,* 783 N.E.2d 253, 260 (Ind.2003). Therefore, in light of our acknowledgement that I.C. § 27–1–15.6–31 cannot be applied in this case, we will nevertheless address Appellant's main contention as to whether John had an insurable interest in the life of the Decedent.

### B. *Law Prior to Enactment of I.C. § 27–1–15.6–31*

■ Under the common law, every person has an interest in his own life, which will support a policy taken thereon by himself, although the beneficiary named therein be a mere stranger, without any insurable interest therein. *Miller v. Travelers' Ins. Co.,* 81 Ind.App. 618, 144 N.E. 554 (1924); I.C. § 27–1–12–14. Thus, except as modified by statute, it has long been held that a person may take out a policy of insurance on his or her own life for the benefit of another, without regard to the existence of insurable interest in the latter, at least where the premiums are paid by the insured and not by the beneficiary. *Milner v. Bowman,* 119 Ind. 448, 21 N.E. 1094, 1095–96 (1889).

■ However, the necessity of an insurable interest in human life arises where a person takes out an insurance policy for his or her own benefit on the life of another. While a third person who has an interest in the life of another person may, as a general rule, take out a policy of insurance on the other person's life, a policy issued to a person who has no insurable interest in the life of the insured is void. *Amick v. Butler,* 111 Ind. 578, 12 N.E. 518, 519 (1887). With its roots in public policy, this long-standing rule was initiated as a means to forbid wagering contracts on human life. *Id.; see also Miller,* 144 N.E. at 555; *Prudential Ins. Co. v. Jenkins,* 15 Ind.App. 297, 43 N.E. 1056 (1896). Accordingly, a policy or certificate issued by an insurance corporation or association is not valid when payments are made by any person other than the insured without the written consent of the insured, unless the policy is supported by an insurable interest. I.C. § 27–8–1–6.

### C. *Analysis*

In the present case, the Appellants do not dispute that the Decedent, as owner of the three annuity policies and payor of their premiums, had the right to name whomever she wanted as beneficiary of the

---

**2.** I.C. § 27–1–15.6–31, enacted in 2001 by Public Law 132–2001, went into effect on January 1, 2002.

policies. *See Milner,* 21 N.E. at 1095–96. Rather, the Appellants' contention is focused on John's status of insurance agent, which is akin to a third party who cannot validly procure a policy of insurance on the life of another and be its beneficiary unless he has an insurable interest in the life of the insured.

■■■ In addressing the issue of whether John had an insurable interest in the life of the Decedent, we first observe our supreme court's quotation of more than a century ago in *Burton v. Connecticut Mut. Life Ins. Co.,* 119 Ind. 207, 21 N.E. 746, 747 (1889): "It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies." With that in mind, we find that under Indiana law, a person has an insurable interest in the life of another where there is a reasonable probability that he or she will gain by the latter's remaining alive or lose by his death. *State v. Willett,* 171 Ind. 296, 86 N.E. 68, 71 (1908). Additionally, we find that such an interest need not be capable of conversion to a definite pecuniary estimation or be founded on a mere pecuniary relation; in fact, the interest may lie in the ties of blood or affinity. *Burton,* 21 N.E. at 747. Nevertheless, Indiana courts have also traditionally held that those ties must provide reasonable ground for the expectation of a material benefit, as distinguished from a sentimental benefit, from the continuation of the life of the insured. *Id.* Thus, although we have held that an insurable interest can be based on a pecuniary or a blood relationship, we have placed alongside that rule an additional maxim—that the existence of a family relationship alone is not sufficient to create an insurable interest of a person in the life of his or her father, mother, son, or other relative. *New York Life Ins. Co. v. Greenlee,* 42 Ind.App. 82, 84 N.E. 1101

(1908); *Prudential Ins. Co. of America v. Hunn,* 21 Ind.App. 525, 52 N.E. 772 (1899).

We note that the *Burton* court explained this double-edged rule quite elegantly when it stated:

... the mere existence of such a tie is not of itself sufficient to constitute an insurable interest, but [ ] the [blood] tie must be such as to give reasonable ground for an expectation of benefit or advantage from the continuance of the life. By 'benefit or advantage' in this connection we understand that it must be a material or physical 'benefit or advantage,'—that is to say, a mere sentimental benefit arising from a gratification of the affections by the prolongation of the life assured will not suffice. The expected benefit must consist in service, maintenance, or the like. This is equivalent to saying that it must be a pecuniary benefit, as distinguished from a mere sentimental or moral gratification. Thus understood, the doctrine of these cases, which professedly reject the test of pecuniary interest, is not substantially different from that held in other cases.

*Burton,* 21 N.E. at 747 (quoting *Morrell v. Insurance Co.,* 64 Mass. 282 (1852)). Then, likewise in Miller, we stated, "it is well settled in this state that an insurable interest does not arise from the mere fact of the kinship shown, but must be a pecuniary one, and be disclosed by the facts alleged." *Miller,* 144 N.E. at 555. Consequently, we are persuaded by the Appellants' contention in this case that Indiana has historically required some economic interest in the life of the insured to support the existence of an insurable interest. However, we note that the necessary extent of that economic benefit is not easily defined or measured.

In the record before us, there is no evidence that John was financially dependent upon the Decedent when the insur-

ance contracts were negotiated or at the time the Decedent died.[3] John was entitled to guardianship fees while acting as the Decedent's guardian from 1996 to 2002, but (1) the insurance policies were procured prior to the payment of any fees, and (2) we decline to set precedent whereby an insurance agent could bypass the demands of I.C. § 27–1–15.6–31 under current law by persuading a client to name him or her as their guardian. In addition, the record shows that John received a commission payment each time he sold or converted an annuity policy for the Decedent; however, if the receipt of commissions was deemed an economic benefit tantamount to an insurable interest, we would create another route to circumvent I.C. § 27–1–15.6–31. Thus, we conclude that under these facts, John's interest in the Decedent's life was no more than that of kinship and sentimental value. Consequently, we disagree with the trial court's conclusion that John had an insurable interest in the life of his mother.

 Nevertheless, we find the existence of an insurable interest in the instant case irrelevant. Despite Appellant's argument that John failed to raise the issue of the applicability of I.C. § 27–1–15.6–31 at trial,[4] we fail to find any illegality or impropriety in John's sale of the annuity policies to the Decedent at the time he conducted the transactions. In doing so, we recognize that John, a highly experienced insurance agent, did not act under the purview of I.C. § 27–1–15.6–31 when he sold the annuities to his mother. No such similar statute existed prior to 2001, and John did not sell or convert any insurance policy on his mother's behalf after 1998. Thus, the bottom line is that the Decedent bought each of the policies, paid their premiums, and named John as the primary beneficiary on each of them. Accordingly, since it has long been held that a person may procure an insurance policy on his or her own life for the benefit of another, without any regard to an insurable interest, we cannot put forth any legal justification for revoking John's beneficiary status on these policies. *See Milner*, 21 N.E. at 1095–96.

Additionally, we emphasize that the rule requiring an insurable interest in the life of the insured is grounded in the public policy against wagering on people's lives. *See Amick*, 12 N.E. at 519; *see also Miller*, 144 N.E. at 555. Here, the record does not support any inference that John, in helping the Decedent procure the annuity policies, was wagering on the Decedent's life. Rather, we find apparent in the record actions and behavior by John that support an inference that he desired to prolong the life of the Decedent, who in fact lived well into her 90's. Furthermore, the Appellants do not attack the trial court's judgment on grounds that it incorrectly found no fraud, undue influence, or duress in the relationship between John and the Decedent. As a result, we can

---

3. Indiana law is also unclear as to *when* an insurable interest in the life of another must exist. Some states appear to only require an insurable interest at the inception of the insurance contract, but there is contrary authority holding that cessation of the interest is fatal to the validity of the contract. *See In re Marriage of Day*, 31 Kan.App.2d 746, 74 P.3d 46, 51 (2003).

4. We have repeatedly held that a party may not argue an issue on appeal that was not properly presented to the trial court. *Cox v. Anderson*, 801 N.E.2d 775, 778 (Ind.Ct.App. 2004). However, this case presents a unique situation in that waiving the issue of the applicability of I.C. § 27–1–15.6–31 would in essence require us to retroactively apply the statute. Therefore, because there is no indication from the legislature that it intended I.C. § 27–1–15.6–31 to apply in any way but prospectively, we decline to directly apply it in this case.

find no factual basis for holding that any public policy was violated by the apparently good-faith contracts of insurance purchased by the Decedent, and arranged by John. *See Salem Lodge No. 21, F. & A.M. v. Swails,* 209 Ind. 347, 197 N.E. 837, 839 (1935). Therefore, we hold that although the trial court erred in concluding that John had an insurable interest in the life of the Decedent, such error has an insignificant impact under this set of facts. Accordingly, John is the legal beneficiary of each of the three annuity policies at issue in this case.

### CONCLUSION

Based on the foregoing, we conclude that as Indiana law now stands, an economic benefit is required for the existence of an insurable interest in the life of another. Here, we conclude that the trial court incorrectly found that John had an insurable interest in the life of the Decedent, his mother. However, the trial court's determination that John possessed such an insurable interest does not affect the outcome of this case in light of the inapplicability of I.C. § 27–1–15.6–31 to the facts at hand.

Affirmed.

VAIDIK, J., and DARDEN, J., concur.