In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3013

DEBRA L. MILLER, Trustee,

*Plaintiff-Appellant*,

*v.*

LASALLE BANK NATIONAL ASSOCIATION
as Trustee in Trust for the Holders of
Merrill Lynch Mortgage Investors Trust
Series 2002-AFCI and Alliance Funding,
a Division of SUPERIOR BANK FSB,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 3:09-cv-184-WCL—**William C. Lee**, *Judge*.

ARGUED DECEMBER 7, 2009—DECIDED FEBRUARY 19, 2010

Before CUDAHY, WOOD, and EVANS, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This is an appeal involving a
puzzle of statutory interpretation. The issue comes to us
from an adversary proceeding in bankruptcy court be-
tween Linda Miller (Trustee) and LaSalle Bank National

Association (LaSalle). The bankruptcy court held that an improperly recorded mortgage was avoidable under Indiana law as amended in 2007 because it did not impart constructive knowledge to a bona fide purchaser, here the Trustee. The bankruptcy court held that the 2007 Amendment applied only to mortgages recorded after the Amendment's effective date of July 1, 2007. The district court reversed, and the Trustee appeals. Because we interpret the statute to apply to all mortgages regardless when recorded, we affirm the district court.

## I. Background

None of the operative facts is in dispute. In 2001, the debtors executed and delivered to Alliance, LaSalle's predecessor, a mortgage on a property in Peru, Indiana, to secure a $49,300 loan. The mortgage was filed with the Miami County Recorder in May 2001, but the acknowledgment had a technical defect because it did not identify the individuals who appeared before the notary and executed the mortgage document. After the debtors filed a voluntary petition for relief under Chapter 13, in March 2008, the Trustee brought an adversary proceeding to avoid LaSalle's mortgage lien.[1]

In Indiana, as elsewhere, a recorded, "properly acknowledged" mortgage imparts constructive notice of its existence to subsequent bona fide purchasers (BFPs). See *Bank*

---

[1] See 11 U.S.C. § 544(a), (c). The Trustee's rights arose on October 19, 2007 when the bankruptcy petition was filed.

*of New York v. Nally*, 820 N.E.2d 644, 648 (Ind. 2005). Prior to the 2007 Amendment, a mortgage that was not entitled to be recorded because of a technical defect in the acknowledgment did not provide such notice.[2] See IND. CODE § 32-21-2-3 (requiring that a notary public authenticate signature for grantors of mortgage); § 32-21-2-7 (now modified by § 32-21-4-1, at issue in the present case); *Sandy Ridge Oil Co., Inc. v. Centerre Bank Nat'l Ass'n (In re Sandy Ridge Oil Co., Inc.)*, 510 N.E.2d 667, 669 (Ind. 1987) (stating the general rule); *In re Stubbs*, 330 B.R. 717, 731 (Bankr. N.D. Ind. 2005) (holding that an acknowledgment was defective because it did not include the name of the person who appeared before a notary public), *aff'd* 2006 WL 2361814 (N.D. Ind. 2006)); *Baldin v. Calumet Nat'l Bank* (*In re Baldin*), 135 B.R. 586, 601-02 (Bankr. N.D. Ind. 1991).

In 2007, the Indiana General Assembly amended its recording statute, IND. CODE § 32-21-4-1, to allow recorded mortgages with certain technical defects to provide constructive notice as if the mortgages were properly recorded and acknowledged. The district courts that have interpreted the statute in this case, and both parties in the present appeal, note that the legislature passed the 2007 Amendment in an apparent attempt to overrule

---

[2] Neither party contests that the acknowledgment in the present appeal suffered from a technical defect. At oral argument, the Trustee conceded it was likely that, regardless of the technical defect, the mortgage document would show up in a chain of title.

*In re Stubbs*. In 2008, the Assembly again amended the statute and made it clear that the statute applied to all mortgages, regardless when recorded (2008 Amendment). The parties dispute whether, before the 2008 Amendment came into force, the 2007 Amendment applied to purchasers of properties encumbered by certain technically deficient mortgages recorded prior to July 1, 2007.

In the present case, the bankruptcy court found the 2007 Amendment ambiguous but held that it was most naturally interpreted to apply to mortgages recorded after July 1, 2007. The bankruptcy court ultimately grounded its decision on several presumptions of statutory interpretation. It construed the purpose of the 2007 Amendment as "divest[ing] a BFP and a bankruptcy trustee of the right to avoid an improperly recorded mortgage." Based on the presumption that statutes are applied prospectively, the bankruptcy court construed the statute to apply only to mortgages recorded after the 2007 Amendment's effective date. On appeal, the district court disagreed with the bankruptcy court's interpretation of the language of the Amendment. See *Miller v. LaSalle Bank Nat'l Ass'n* (*In re Gysin*), 409 B.R. 485, 491 (N.D. Ind. 2009). The district court began by examining indicia of legislative intent. It credited LaSalle's argument that the 2008 Amendment was passed in response to frequent arguments by bankruptcy trustees in the inter-amendment period that the 2007 Amendment should be interpreted to apply only to mortgages recorded after the 2007 Amendment became effective. See *id*. at 489. The district court thus found that the Indiana Legislature intended the 2007 Amendment to apply to all mortgages and ap-

parently did not rely on the default rule that statutes are to be applied prospectively. See *id.* at 491.

## II. Standard of Review

When reviewing a bankruptcy court's decision, an appeals court applies the same standard of review as does the district court. We review de novo the district court's grant of summary judgment and its interpretation of Indiana law. See *Estate of Moreland v. Dieter*, 576 F.3d 691, 695 (7th Cir. 2009) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991)); *Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006).

## III. Discussion

The purpose of a recording statute is to provide protection to subsequent purchasers, lessees and mortgagees. See, e.g., *Szakaly v. Smith*, 544 N.E.2d 490, 491 (Ind. 1989). In 2003, after a 2002 recodification, Indiana's recording statute provided:

Sec. 1.

(a)

(1) conveyance or mortgage of land or of any interest in land; and

(2) a lease for more than three (3) years.

must be recorded in the recorder's office of the county where the land is situated.

(b) A conveyance, mortgage, or lease takes priority according to the time of its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

IND. CODE § 32-21-4-1 (2002).

An amendment in 2003 moved the last phrase of (a) to become the introductory phrase of the subsection ("The following must be recorded. . . ."), and the 2007 Amendment provided subsection (c):

(c) This subsection applies only to a mortgage. If:

(1) an instrument referred to in subsection (a) **is recorded**; and

(2) the instrument does not comply with the:

(A) requirements of:

(i) IC 32-21-2-3; or

(ii) IC 32-21-2-7; or

(B) technical requirements of IC 36-2-11-16(c);

the instrument **is validly recorded** and provides constructive notice of the contents of the instrument as of the date of filing.

P.L. 135-2007 § 2, 2007 Ind. Acts 1919, 1920 (effective July 1, 2007) (emphasis added).

The 2008 Amendment amended subsection (c) to add "[t]his subsection applies regardless of when a mortgage

was recorded" after the first sentence. P.L. 129-2008, 2008 Ind. Acts 1908, 1908 (effective July 1, 2008). Consequently, our interpretation of the 2007 Amendment affects only properties "purchased" (here under the strong arm powers of the Trustee) between July 1, 2007 and July 1, 2008.

Indiana law includes familiar rules of statutory interpretation. The statute is given its clear and plain meaning if unambiguous, but if ambiguous the court must try to ascertain the legislature's intent, and the court's primary goal is to interpret the statute to effectuate that intent. *Basileh v. Alghusain*, 912 N.E.2d 814, 821 (Ind. 2009); *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). The Indiana Supreme Court describes the "intent" inquiry as follows: "[t]he court will look to each and every part of the statute; to the circumstances under which it was enacted; to the old law upon the subject, if any; to other statutes upon the same subjects, or relative subjects, whether in force or repealed, to contemporaneous legislative history, and to the evils and mischiefs to be remedied." See *Ashlin Transp. Services, Inc. v. Indiana Unemployment Ins. Bd.*, 637 N.E.2d 162, 166-67 (Ind. Ct. App. 1994) (summarizing Indiana Supreme Court cases). Because Indiana statutes have no explanatory committee reports, there is little legislative history to examine beyond amendments to the statute. See, e.g., *C.C. v. State*, 907 N.E.2d 556, 558-59 (Ind. Ct. App. 2009).

In addition to the presumption against retroactivity, Indiana caselaw recognizes many other familiar presumptions of statutory interpretation: e.g., if language is used

in one section but omitted in another, the court presumes that the legislature acted intentionally in doing so, see *City of Crown Point v. Misty Woods Properties, LLC*, 864 N.E.2d 1069, 1076 (Ind. Ct. App. 2007) (internal citations omitted); statutes in derogation of the common law are to be strictly construed, see *Stanley v. Walker*, 906 N.E.2d 852, 862 (Ind. 2009) (Dickson, J., dissenting) (citing *Bartrom v. Adjustment Bureau, Inc.*, 618 N.E.2d 1, 10 (Ind. 1993)); and an amendment to a statute creates the rebuttable presumption that the amendment was intended to change the law, see *Turner v. State*, 870 N.E.2d 1083, 1087 (Ind. Ct. App. 2007). Lastly, when the legislature passes several statutes during the same session, those should be interpreted in harmony, to give effect to each. See, e.g.,*Ware v. State*, 441 N.E.2d 20, 22-23 (Ind. Ct. App. 1982) (internal citations omitted).

We thus begin with the language of the statute. The parties provide two interpretations of the phrase "is recorded" in subsection (c). Both parties' arguments are reasonable, and we hold that the statute is ambiguous. The bankruptcy court held, and the Trustee argues, that "is recorded" is a present tense (passive) verb (having temporal significance)—and subsection (c) only applies to mortgages that "[are] recorded" after the Amendment's effective date. They also note that § 32-21-4-2 (another provision in the same chapter, added in 2002) uses the language "this section applies to an instrument regardless of when the instrument was recorded," suggesting that the legislature knew how to specify that a section applied to all mortgages. On the other hand, the district court held, and LaSalle contends, that "is recorded" is used

as a past participle (having adjectival significance), and, thus subsection (c) applies to all mortgages, whenever recorded. The district court noted that the 2007 Amendment includes another past participle "is validly recorded," suggesting that "is recorded" is also a past participle.[3] LaSalle also argues that it is illogical that each verb in § 32-21-4-1 "speaks" as of the date that it is amended, since the statute has been amended many times.[4] Given that both of these constructions of the statute are reasonable, we proceed to employ the tools of statutory interpretation to clarify the legislature's intent.

Still addressing the plain meaning of the statute, the Trustee contends that the amendment to Code § 32-21-4-1(c) only applies to mortgages that are "recorded" and, if it applied to all mortgages regardless when recorded, the phrase "is recorded" would be surplusage because subsection (a) already requires the mortgage to be recorded. It is, however, possible to read "is recorded" in subsection (c) to clarify that the subsection does not create an exception for technical violations in the acknowl-

---

[3] The original version of the bill used the phrase "a valid recording" rather than "is validly recorded." Senate Conference Committee Report, *available at* http://www.in.gov/legislative/bills/2007/SCCF/CC023201.001.html.

[4] The Trustee argues that the Lexis/Nexis headings provide some clue to the meaning of the statute. We have recently noted that the Indiana Legislature does not include official titles in its enacting legislation. See *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 877 (7th Cir. 2009). We therefore decline to entertain these arguments.

edgment to the mandatory recording requirement. That is, reading the subsection (c) without "is recorded," someone might argue that subsection (c) creates an exception to both the mandatory recording required by subsection (a) and to the technical requirements it lists.

Next, assuming that the 2007 Amendment is ambiguous, the parties argue over indicia of legislative intent and the presumption against retroactivity. In Indiana, absent "strong and compelling" reasons, statutes will not be interpreted to apply retroactively. See *Martin v. State*, 774 N.E.2d 43, 44 (Ind. 2002); *In re Estate of Powers*, 849 N.E.2d 1212, 1217 (Ind. Ct. App. 2006) (citing *Bourbon Mini-Mart, Inc. v. Gast Fuel & Services, Inc.*, 783 N.E.2d 253, 260 (Ind. 2003)). As an initial matter, the parties dispute whether the 2007 Amendment has a retroactive effect. A statute is retroactive if it "attaches new legal consequences to events completed before [the law's] enactment." *Estate of Moreland v. Dieter*, 576 F.3d 691, 696 (7th Cir. 2009) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 286 (1994) (Scalia, J., concurring)). However, as Justice Scalia explains in his concurrence, a presumption against retroactivity should only apply to the relevant "retroactivity event." For example, a ban on gambling is not "retroactive" as applied to casino builders, even though it upsets their profit expectations, because the relevant conduct for retroactivity analysis is gambling, not casino construction. *Landgraf*, 511 U.S. at 293 n.3.[5]

---

[5] The Trustee notes that the Supreme Court's analysis of the retroactive effect of statutes is not controlling on the state law

(continued...)

The statute has no retroactive effect. The Trustee charac-terizes the relevant "retroactivity event" as the recording of the mortgage in 2001 and the legal consequences of that past act. Under her interpretation, the 2007 Amendment reaches back and changes the legal consequences of the defective acknowledgment, that was "recorded" in 2001. LaSalle claims that the relevant event is the attachment of the BFP's rights.

We agree with LaSalle's definition of the relevant retroactivity event. The determination whether a statute is permissibly retroactive may depend on whether the statute, if it applies to past conduct, upsets vested sub-stantive rights, liabilities or duties that arose before the statute's enactment. *Landgraf*, 511 U.S. at 280. This inquiry is guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." See *Landgraf*, 511 U.S. at 270. Then-Chief Judge Hamilton, addressing the 2007 Amendment, explained, with reference to *Dieter*, that "the 2007 [A]mendment did not change the 'calculus' for any party or upset any reliance interests." See *Boston v. The Huntington Nat'l Bank*, No. 1:09-cv-0679-DFH-JMS, 2009 WL 2563473, at *5 (S.D. Ind. Aug. 17, 2009) (citing *DeHart v. Anderson*, 383 N.E.2d 431 (Ind. Ct. App. 1978) (holding that a statute that lowered the age of majority to 18 did not have retroactive effect on the

---

[5] (...continued)
question whether the 2007 Amendment is being applied retroactively if it renders valid the 2001 recording of the debtors' mortgage. Of course, we cite *Landgraf* as persuasive authority.

plaintiff's lawsuit when the applicable statute of limitations was shortened because it was tied to the age of majority)); see also *O'Laughlin v. Barton*, 582 N.E.2d 817 (Ind. 1991) (finding that a statute that allowed courts to use a criminal defendant's payment to the court to satisfy a civil plaintiff's judgment against him was not retroactively applied even though it was used to dispose of funds paid into the court before the statute's passage). We do not agree with the Trustee that debtors had vested rights to the effect of technical defects at the time the mortgage was recorded. The rights of the bank and the debtors (here represented by the Trustee) vis-à-vis other creditors were determined at the time the Trustee's strong-arm powers arose. The 2007 Amendment does change the rights of BFPs for purchases made after July 2007—but that effect is clearly prospective. As explained above, the bankruptcy trustee's rights arose in 2007, after the effective date of the 2007 Amendment.

In contrast to the present case, in *Dieter*, an amended statute required the government to pay for any adverse judgment against its employees if the government defended or had the opportunity to defend its employee; under the prior version of the statute, the government could decline to indemnify the employee on the basis of public interest. *See* 576 F.3d at 696. The Seventh Circuit determined that the amended statute attached new consequences to past events because the government chose to defend the employees at trial before it knew that it would necessarily be on the hook for a possible adverse judgment. *Id*. at 696-97; see also *State v. Pelley*, 828 N.E.2d 915, 919-20 (Ind. 2005) (holding that a statute that

created a counselor/client privilege should not be retro-actively applied to records created prior to the statute because of the presumption against retroactivity). Trying to apply the reasoning of *Dieter* to the present case, it makes no sense to suggest that the debtors did not choose to defectively record their mortgage in reliance on a settled expectation that it could avoid the bank's lien.

We next address the presumption that an amendment altering a prior statute suggests that the legislature in-tended to change the meaning of the law "unless it clearly appears that the amendment was passed to clarify the legislature's original intent." *Sun Life Assur. Co. of Canada v. Indiana Dept. of Ins.*, 868 N.E.2d 50, 56 (Ind. Ct. App. 2007) (citing *Wright v. Fowler*, 459 N.E.2d 386, 389-90 (Ind. Ct. App. 1984) (interpreting an amendment to have changed the law in part because the assembly added categories of employers to the statute and separately added provisions to provide procedures for addressing those employers)); *Olatunji v. State*, 788 N.E.2d 1268, 1272 (Ind. Ct. App. 2003) (holding that a legislative amend-ment that appeared to approve the analysis of a recent Indiana Supreme Court case was a clarification rather than an amendment). The Supreme Court of Indiana recently muddied the waters by explaining that "[w]here it appears that the Legislature amends a statute to express its original intention more clearly, the normal presumption that an amendment changes a statute's meaning does not apply." See *Indiana Dept. of Revenue v. Kitchin Hospitality, LLC*, 907 N.E.2d 997, 1002 (Ind. 2009) (citing other tax cases and holding that a new definition was merely a clarification).

We recently discussed several factors that aid in determining whether an amendment is clarifying rather than substantive, see *Middleton v. City of Chicago*, 578 F.3d 655, 664 (7th Cir. 2009): "whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history." 578 F.3d at 663-64. The Trustee avers that the 2008 Amendment and its legislative history are silent on the issue whether it clarified the statute, and no intervening court cases alerted the legislature that there was a conflict or ambiguity regarding the interpretation of the 2007 Amendment. LaSalle responds that the synopsis attached to the 2008 Amendment indicates that the Amendment "specifies" (as opposed to "amends" or "changes") that subsection (c) applies to all mortgages, regardless when recorded, further, the statute is clearly ambiguous, considering all the trouble it has given courts and the fights it has inspired between litigants.[6]

It was the same legislative session that enacted both amendments within 10 months. In addition, some of the

---

[6] Although it is unclear what weight a court should give the Indiana legislature's comments in the synopsis attached to a bill, an Indiana appeals court has recently relied on a bill's synopsis to establish that the bill was enacted in response to a review by the sentencing policy study committee, see *Collins v. State*, 911 N.E.2d 700, 709 (Ind. Ct. App. 2009), suggesting that a synopsis is entitled to some weight in the court's analysis of a statute's proper interpretation.

sponsors of the 2008 Amendment were also those that sponsored the 2007 Amendment. As noted at oral argument, in the inter-amendment period, bankruptcy trustees argued that the 2007 Amendment did not apply to older mortgages, and this activity may have prompted the legislature to act. We certainly acknowledge the possibility that bank lobbyists won a partial victory over general creditors in 2007 and achieved their legislative goal in 2008. In addition, it is possible the legislature amended the statute in 2008 because the economic landscape changed dramatically in the intervening period. Weighing all of those possible explanations, we conclude that the best interpretation of the legislature's intention regarding the 2008 Amendment was that it clarified the 2007 Amendment. We turn, as persuasive authority, to the factors in *Middleton*: given the obvious ambiguity in the 2007 Amendment, and the apparent activity of the bankruptcy trustees in aggressively seeking to avoid mortgages on technical grounds even after the 2007 Amendment, we hold that the 2008 Amendment did not change the meaning of the statute as amended in 2007, but merely clarified it to effectuate the legislature's intent in 2007. See *Middleton*, 578 F.3d at 663-64.

Although the foregoing disposes of the case, we pause before the parties' other arguments regarding legislative intent before concluding. Thus, the Trustee urges that the legislation's synopsis indicated that the General Assembly only intended the Amendment to apply to certain, but not all, recorded mortgages. It reads the modifier "certain" as classifying types of mortgages

based on when they were filed, pre- or post-July 2007. The synopsis is again ambiguous. In contrast to the Trustee's interpretation, it seems equally, if not more plausible, that the Assembly used the word "certain" to differentiate amongst the technical defects the mortgages suffered—differentiating those specified in the statutes listed in subsection (c) from other possible defects. In addition, the synopsis of the 2008 Amendment notes that the Amendment: "[s]pecifies that a provision in current law, which states that a recorded mortgage not meeting certain statutory requirements constitutes constructive notice, applies regardless of when the mortgage was recorded." Consequently, the same legislature, 10 months later, omitted the word "certain" when it described its under-standing of the law after the 2007 Amendment. While the pronouncements of a subsequent legislative body on a prior statute are not binding, they are "respectfully consid-ered" when interpreting an unclear statute. See *Indiana State Police Dept. v. Turner*, 577 N.E.2d 598, 602 (Ind. Ct. App. 1991). The synopses of the two statutes are too ambiguous to provide any assistance in interpreting the statute as it stood in the second half of 2007.

In sum, the 2007 Amendment is ambiguous, thus, considering the above-discussed indicia of legislative intent including, most importantly, the 2008 Amendment that quickly clarified that the provision applied to all mortgages, the legislature likely intended the 2007 Amendment to apply to all mortgages, whenever filed. And we note that this result was reached by other district courts reviewing bankruptcy court decisions. See *Nat'l City Mortgage Co. v. Yoon*, No. 2:09-cv-134, 2009

WL 2951122 (N.D. Ind. Sept. 10, 2009); *Boston v. The Huntington Nat'l Bank*, No. 1:09-cv-0679-DFH-JMS, 2009 WL 2563473 (S.D. Ind. Aug. 17, 2009). For the foregoing reasons, therefore, the district court here is

AFFIRMED.