**John L. SPEIDEL, Individually and as Administrator of the Estate of Wilma K. Speidel, Deceased, Appellant (Plaintiff Below),**

v.

**STATE of Indiana and State Highway Commission, Appellees (Defendants Below).**

**No. 2–678A193.**

Court of Appeals of Indiana, Fourth District.

Feb. 19, 1979.

Rehearing Denied March 27, 1979.

Richard A. Young, Young & Young, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Robert S. Spear, Asst. Atty. Gen., James R. Green, Deputy Atty. Gen., Indianapolis, for appellees.

YOUNG, Judge.

Appellant Speidel's wife died as the result of an automobile accident in 1970. A wrongful death action was brought against the State of Indiana (State). Speidel re-

ceived a judgment in his favor in 1975. This judgment was affirmed by the Court of Appeals and the Supreme Court denied transfer on February 21, 1978. The State paid the principal amount of the judgment on March 10, 1978. The issue before this Court is whether the State owes interest to Speidel upon the principal amount. The trial court denied interest and we affirm.

The result we reach is based upon IC 1971, 34–4–16.5 (Burns Code Ed., Supp. 1978), the Tort Claims Act (the Act). This Act became law in 1974 and consequently was in force when the judgment was obtained in 1975. Section 17 of the Act excuses the State from liability for interest if the judgment is paid "not later than one hundred eighty days after a final decision is rendered." IC 1971, 34–4–16.5–17. In the case at hand, the "final decision" was the denial of transfer by the Supreme Court on February 21, 1978. Cf. Ind. Rules of Procedure, Appellate Rule 11(B)(4). As noted, on March 10, 1978, the State paid the judgment. Thus, if Section 17 applies, the State is not liable for interest because it paid the judgment within one hundred eighty days of the denial of transfer.

Speidel, however, argues that Section 17 of the Act applies only to claims which arise after February 19, 1974, when the Act became effective. Inasmuch as Speidel's claim arose in 1970, Speidel asserts the Act does not apply. Consequently, Speidel believes the State is liable for interest from the date of the judgment in 1975 until March 10, 1978, when the judgment was paid. Any other conclusion, Speidel asserts, would amount to an improper "retroactive" application of Section 17. The State, in response, counters that the application of Section 17 turns not upon the date of the accident, 1970, but upon the date of the judgment, 1975. Thus, because judgment was rendered after the 1974 passage of the Act, Section 17 operates to excuse the State's liability for interest on the judgment.

Neither party to this appeal has found Indiana precedent squarely on point. However, an examination of the reported decisions leads to the conclusion that Speidel is not entitled to interest.

As already noted, Speidel argues in general terms that the application of the 1974 statute to the 1970 accident amounts to "retroactive" application of the statute. However, Speidel's contention dodges two important points which delimit the issue before us. First, the target of our inquiry is the 1975 judgment, and not the 1970 date of the accident. We make this demarcation because Section 17 operates only upon the judgment; Section 17 in no way disables Speidel from bringing a cause of action based upon the accident. Second, the State is not using Section 17 to attack a judgment rendered prior to the passage of the statute. Rather, the State desires to apply the statute to a lawsuit which was pending when the statute became effective.

With the issue thus cast, we address ourselves to Section 17 and to the 1975 judgment to determine whether there is any prohibition against applying Section 17 to the judgment. We find none. This is because Section 17 is effective to excuse the State's liability for interest so long as Speidel did not have a "vested" right to receive interest on the judgment. *Connecticut Mut. Life Ins. Co. v. Talbot,* (1887) 113 Ind. 373, 14 N.E. 586, 589; *In re Smith,* (1945) 115 Ind.App. 494, 60 N.E.2d 147, 149; *Hiatt v. Howard,* (1937) 104 Ind.App. 167, 8 N.E.2d 136, 138. The law is stated as follows:

> The better rule of construction, and the rule peculiarly applicable to remedial statutes, however, is that a statute must be so construed as to make it effect the evident purpose for which it was enacted; and if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied, although the statute does not, in terms, so direct, unless to do so would impair some vested right, or violate some constitutional guaranty.

*Connecticut Mut. Life Ins. Co. v. Talbot, supra,* 14 N.E. 586, 589.

In the case at hand, Speidel did not possess a vested right to receive interest.

A litigant generally does not have an unalterable right to any particular type of remedy for his injury. *Davis v. Rupe,* (1888) 114 Ind. 588, 17 N.E. 163. Although *Davis* was a contract case and not a tort case, the principles enunciated therein are no less valid. The pertinent part of *Davis* is set out below:

> As has often been declared, there can be no vested right in remedies, provided they are not so changed as to be rendered nugatory. Hence it is that whatever belongs to the remedy merely is within the control of the legislature, subject only to the limitation that an adequate and reasonable mode of enforcing the right must remain or be provided which leaves the value of the contract without substantial depreciation or impairment.

*Davis v. Rupe, supra,* 17 N.E. 163, 165; *see, Dowell v. Talbot Paving Co.,* (1894) 138 Ind. 675, 38 N.E. 389, 393–94 (overruled on other grounds, 226 Ind. 678, 83 N.E.2d 47, 50) (". . . it is a well-recognized rule of construction that statutes relating to the procedure or remedy, such as relate to the course and form of proceedings for the enforcement of a right, and do not affect the substance of the right, and neither directly nor indirectly destroy all remedy for the enforcement of the right, are retrospective,. so as to apply to causes of action subsisting at the date of their passage.").

In this case, Section 17 falls far short of destroying Speidel's right to recover against the State. The statute operates only to excuse the State's liability for interest if the judgment is promptly paid. Consequently, Section 17 applies to this case and the State is not liable for interest.[1]

Speidel relies principally upon *Palmer v. State,* (1977) Ind.App., 363 N.E.2d 1245; *State v. Daley,* (1975) Ind.App., 332 N.E.2d 845, and *Baltimore & O. S. W. Ry. v. Reed,* (1902) 158 Ind. 25, 62 N.E. 488, in support of his position. These cases are distinguishable. In *Palmer v. State* the court held that the notice provisions of the Tort Claims Act did not apply to the case then before it. This result was reached because the notice requirement was itself directly tied to an event (the date of the accident) which had occurred prior to the passage of the Act. Consequently, the court in *Palmer v. State* rejected the asserted application of the Act because the application would have turned upon an event which occurred *prior* to the date the Act became effective. In contrast, the application of the Act in the present case turns upon the date of the judgment, an event which occurred *after* the passage of the Act. *See City of Indianapolis v. Wynn,* (1959) 239 Ind. 567, 157 N.E.2d 828 (amendatory statute; former statute governs events prior to amendatory statute;

---

1. The result we reach is consistent with the case law of other jurisdictions. *See* Annot., "Retrospective application and effect of statutory provision for interest or changed rate of interest," 4 A.L.R.2d 932, 933–34 (1949):

> Statutes may affect the interest rate by increasing or reducing the permissible legal rate, by allowing interest in situations where it has previously not been collectible, or by forbidding the collection of interest in situations where it was previously allowed. Questions as to the retrospective application of these various types of statute to the variety of transactions from which the obligation to pay interest arises forms the subject matter of this annotation. Such questions typically arise where the collection of interest is sought to be enforced after the passage of the changing statute, but upon an obligation or transaction some aspect of which occurred prior to the change.
>
> In determining whether and how the statute applies, the first step should be to consider whether by its terms it covers or was intended to cover the various prior obligations or transactions, under the ordinary rules of statutory construction. If intended to apply retroactively, the further question of power arises. Whether the state has the power to change the interest rate may depend upon whether the obligation to pay interest arises from the agreement of the parties or merely by force of policy of the sovereign. If the former, the agreement is protected from retroactive statutory change, and the only question is as to the time when the agreement was made. See cases infra, §§ 3, 4, and 5.
>
> *If, however, the right to interest is merely a matter of statutory grace, the state can change the rate to be earned at will,* at least as to the part of the interest period subsequent to the statute, and in some cases even as to the period prior to the statute. (Emphasis added.)

amendatory statute applies to future proceedings of pending cases); 82 C.J.S. *Statutes* § 422, p. 1000 (1953). This same distinction applies to *State v. Daley, supra,* in which the court refused to apply the Act to a judgment rendered *prior* to the passage of the Act. *Palmer v. State* and *State v. Daley* are, therefore, distinguishable because in each case the appellant had asked the court to apply the Act to an event or circumstance which occurred prior to the passage of the Act. *Baltimore & O. S. W. Ry. v. Reed, supra,* is also distinguishable. The issue in that case was whether an Indiana statute could negate a defense to a lawsuit arising under the law of Illinois. We do not find that either the issue of the cited case nor the reasoning employed in the decision applicable to the case at bar.

Finally, we note that the First District of this Court recently decided in *State v. Thompson,* (1979) Ind.App., 385 N.E.2d 198, that Section 4 of the Act did not apply to a judgment on a jury verdict rendered after the effective date of the Act. Section 4, if applicable, would have limited recovery in that case to $300,000. The decision of the First District is not inconsistent with the conclusion reached in the present case. In *State v. Thompson* the Court's focus was a claim for damages which arose *before* the effective date of the Act. Thus the Act was held not to apply. In contrast, the Court's focus in the case at hand is a claim for interest. This claim arose only when judgment was received by Speidel. Judgment was received *after* the effective date of the Act. Consequently the provisions of the Act govern. *Compare* Annot., "Retroactive effect of statute which imposes, removes, or changes a monetary limitation of recovery for personal injury or death," 98 A.L.R.2d 1105 (1964), *with* the annotation cited *supra,* note 1.

The decision of the trial court is affirmed.

CHIPMAN, P. J., concurs with opinion.

MILLER, J., concurs.

CHIPMAN, Presiding Judge, concurring.

I concur with the results reached by the majority in this case, but disagree with their interpretation of IC 1971 34–4–16.5–17 which reads as follows:

A claim or suit settled by, or a judgment rendered against, a governmental entity shall be paid by it not later than one hundred eighty (180) days after settlement or judgment, unless there is an appeal, in which case not later than one hundred eighty (180) days after *a final decision is rendered.* If payment is not made within one hundred eighty (180) days, the governmental entity is liable for interest from the date of settlement or judgment at an annual rate of eight percent (8%). (emphasis added)

The majority interpret that portion of IC 1971 34–4–16.5–17 which refers to a final decision as meaning the denial by the Supreme Court of appellant's petition to transfer.

It is my opinion that the "final decision" in this case was the opinion by the Court of Appeals and occurred on the date its opinion was handed down.

The basis for my opinion is found in Rule 11(B) of the Rules of Appellate Procedure which reads in part as follows:

(3) The opinion or memorandum decision of the Court of Appeals shall be final except where a petition to transfer has been granted by the Supreme Court. If transfer be granted, the judgment and opinion or memorandum decision of the Court of Appeals shall thereupon be vacated and held for naught, and the Supreme Court shall have jurisdiction of the appeal as if originally filed therein, and all the records, briefs and files of said cause on appeal shall be transferred to the Supreme Court.

(4) The denial of a petition to transfer *shall have no legal effect* other than to terminate the litigation between the parties in the Supreme Court. (emphasis added)

Examining the wording of IC 1971 34–4–16.5–17 in conjunction with A.R. 11(B), it would appear logical that if the State of Indiana is to avoid being taxed interest on a

judgment rendered under the Tort Claims Act it must pay the judgment and court costs within one hundred eighty (180) days from the date of the opinion by the Indiana Court of Appeals. This recognizes the fact that there may be instances in which the State elects to seek transfer from an adverse opinion of the Court of Appeals and the Supreme Court may not decide whether to grant or deny transfer within the one hundred eighty (180) days.

In the case at bar the Clerk of the Supreme and Appellate Courts' records indicate that the opinion of the Court of Appeals was dated September 15, 1977. The Supreme Court denied transfer on February 21, 1978 and the State paid the judgment in full on March 10, 1978, one hundred seventy-six (176) days after the opinion of the Court of Appeals. If the State had paid the judgment later than one hundred eighty (180) days from September 15, 1977, I would have dissented to the majority opinion.