# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1478

ESTATE OF CHRISTOPHER A. MORELAND,

*Plaintiff-Appellant,*

*v.*

ERICH DIETER and MICHAEL SAWDON,

*Defendants,*

and

ST. JOSEPH COUNTY BOARD OF COMMISSIONERS,
ST. JOSEPH COUNTY, *et al.,*

*Third-Party Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 99-cv-607—**Philip P. Simon**, *Judge.*

ARGUED FEBRUARY 9, 2009—DECIDED AUGUST 11, 2009

Before POSNER and SYKES, *Circuit Judges*, and DOW, *District Judge*.*

DOW, *District Judge*.    Plaintiff-Appellant, the Estate of Christopher Moreland (the "Estate"), filed a motion for a writ of execution to enforce a judgment against St. Joseph County, Indiana and its Board of Commissioners (the "County"), pursuant to Indiana Code § 34-13-4-1 and Rule 69 of the Federal Rules of Civil Procedure. The district court denied the Estate's motion. Because we conclude that the state law that the Estate seeks to invoke was not intended to apply retroactively, we affirm the order of the district court.

## I. Background

The Estate has appeared before this Court twice, both stemming from the beating of Christopher Moreland. In 1997, Moreland was detained in St. Joseph County's jail on a drunk driving charge. Erich Dieter and Michael Sawdon, officers at the jail, took part in a beating of Moreland that would result in the imposition of massive civil liability against them. Its more immediate effect was Moreland's death.

The details of the assault are reported in *Estate of Moreland v. Dieter*, 395 F.3d 747 (7th Cir. 2005). For present

---

* The Honorable Robert M. Dow, Jr., of the United States District Court for the Northern District of Illinois, sitting by designation.

purposes, we note only that Moreland's beating and subsequent denial of medical care spanned multiple floors of the jail, lasted several hours, and was ruthless. Moreland was physically restrained for much of the incident. Ultimately, he was placed (unconscious) into the jail's "drunk tank" and left for dead.

Pursuant to 42 U.S.C. § 1983, the Estate filed suit against Dieter, Sawdon, and a third officer, Paul Moffa, alleging violations of Moreland's constitutional rights. The County paid for the officers' defenses. In May 2002, a jury returned a verdict against Dieter and Sawdon and determined that they were liable for $56.5 million in damages ($29 million of which were compensatory). The jury deadlocked, however, on the claims against Moffa; a new trial was held, and a jury returned a verdict in his favor in September 2003. This Court subsequently upheld the verdict against Dieter and Sawdon. *Estate of Moreland*, 395 F.3d at 761.

On July 1, 2003—prior to the Moffa retrial, but more than a year after the jury returned the verdict against Dieter and Sawdon, and nearly ten months after the County stopped paying their legal bills—an amendment to the Indiana Code took effect. See 2003 Ind. Acts 1193, 1203-04 (the "2003 Amendment" or the "Amendment"). As discussed below, the 2003 Amendment made changes to Indiana's statutory scheme governing indemnification by "governmental entities" for the conduct of their employees. Critically, the Amendment converted a discretionary indemnification provision into one that is mandatory—although only for non-punitive damages and only

when the governmental entity "defends or has the opportunity to defend" the employee.

In 2007, the Estate sought to invoke the 2003 Amendment, filing with the district court a motion for a writ of execution to collect against "St. Joseph County and/or its Board of Commissioners" on the Dieter-Sawdon judgment. The Estate argued that the 2003 Amendment required St. Joseph County to pay the $29 million in compensatory damages for which Dieter and Sawdon were found liable. The district court denied the motion, and this appeal followed.

## II.  Indiana Code § 34-13-4-1[1]

Section 34-13-4-1 of the Indiana Code relates to indemnification for civil rights claims against public employees. It provides, with the key language in italics:

> If a *present or former public employee*, including a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity, *is or could be subject to personal civil liability* for a loss occurring because of a noncriminal act or omission *within the scope of the public employee's employment* which violates the civil rights laws of the United States, the governmental entity (*when the governmental entity defends or has the opportunity to defend the public*

---

[1]  Indiana Code provisions are set out by their title number, article number, chapter number, and then section number. Hence, Ind. Code § 34-13-4-1 refers to Title 34, Article 13, Chapter 4, Section 1.

*employee*) *shall*, subject to IC 34-13-3-4, IC 34-13-3-14, IC 34-13-3-15, and IC 34-13-3-16, *pay*:

> (1) any judgment (other than for punitive damages) of the claim or suit; or

> (2) any judgment for punitive damages, compromise, or settlement of the claim or suit if; . . .

[the statutorily specified officer or governing body] determines that paying the judgment for punitive damages, compromise, or settlement is in the best interest of the governmental entity. The governmental entity shall also pay all costs and fees incurred by or on behalf of a public employee in defense of the claim or suit.

Ind. Code § 34-13-4-1 (emphasis added).

After a relatively stable existence,[2] Section 1 was expanded by the 2003 Amendment. As amended, the provi-

---

[2] Before 1998, the operative provision was found at Ind. Code § 34-4-16.7-1 (1976). The General Assembly recodified it in 1998 at Ind. Code § 34-13-4-1. See 1998 Ind. Acts 62. The recodified provision was nearly identical to its predecessor, but omitted some language that clarified who is an employee under the law (it had specifically "include[d] a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity") and added two sections that are not germane to the issues in this case. In 2001, the General Assembly reinstated the language that clarified who qualifies as an employee (see 2001 Ind. Acts 1256, 1258-59) but otherwise left the statutory scheme intact. Thus, the 2003 Amendment brought about the only meaningful changes in more than a quarter century to the provision that is at issue.

sion has two noteworthy features. First, in certain cases and subject to a $300,000 cap,[3] the code *requires* a governmental entity to indemnify its public employees for compensatory damages growing out of their noncriminal acts, where the governmental entity "defends or has the opportunity to defend the public employee." Under the prior version of the Act, the governmental entity—no matter how active it was in its employee's defense—could decide whether or not to indemnify its employee. See Ind. Code § 34-13-4-1 (2001 supp.); *City of Muncie v. Peters*, 709 N.E.2d 50, 56 (Ind. Ct. App. 1999) (citing *Kapitan v. City of Gary, Ind.*, 12 F.3d 678, 680 (7th Cir. 1993)).

The second noteworthy feature of amended Section 1 is that it keeps punitive damages and settlements on the same footing as all damages had been under prior law. That is, while indemnification for compensatory damages is in some cases mandatory, indemnification for punitive damages and settlements remains a matter of grace: the governmental entity must foot the bill only if the pertinent officer or governing body "determines that paying . . . is in the best interest of the governmental entity."

As we discuss in greater depth in Part III, *infra*, the at-times mandatory payment of judgments combined with discretionary payment of settlements creates a regime

---

[3] The $300,000 cap is incorporated by reference from Ind. Code § 34-13-3-4. The Estate argues that the $300,000 cap does not apply, but the Estate's restrictive interpretation would read the cross-reference out of the code.

which allows governmental entities to decide whether they would rather pay a settlement or risk a judgment.[4]

## III.  Analysis

The district court ruled that the 2003 Amendment to Section 1 did not apply to Dieter and Sawdon, concluding that the Amendment was not intended to apply retroactively. Indiana Code § 34-13-4-1 has not been extensively interpreted by the Indiana courts, and we review the district court's interpretation of the Indiana Code *de novo*. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991); *United States v. Rosenbohm*, 564 F.3d 820, 822 (7th Cir. 2009).

In Indiana, the lodestar of statutory interpretation is legislative intent, and the plain language of the statute is the "best evidence of . . . [that] intent." *Cubel v. Cubel*, 876 N.E.2d 1117, 1120 (Ind. 2007). Generally, the words in a statute should be given their ordinary meaning. While courts should try to give effect to each word in a statute, they ought not to do so myopically. Instead, "[t]he statute should be examined as a whole, avoiding both excessive reliance on strict literal meaning and selective reading of individual words." *Id.*; *Tormoehlen v. State*, 848 N.E.2d 326, 330 (Ind. Ct. App. 2006) (noting that "legislative intent as ascertained from the whole prevails over the strict, literal meaning of any word or term used" in a statute).

---

[4]  Ind. Code § 34-13-3-14, incorporated into Section 34-13-4-1 by reference, allows the governor to "compromise or settle a claim or suit brought against the state or its employees."

Indiana courts presume that the General Assembly's laws apply prospectively only, unless the statute contains explicit language mandating retroactive application. *State v. Pelley*, 828 N.E.2d 915, 919 (Ind. 2005) ("Statutes are to be given prospective effect only, unless the legislature unequivocally and unambiguously intended retrospective effect as well."); see also *Landgraf v. USI Film Prods.*, 511 U.S. 244, 286 (1994) (Scalia, J., concurring). The presumption against retroactivity is deeply rooted. See, *e.g.*, *Citizens' State Bank of Noblesville v. Julian*, 55 N.E. 1007, 1011 (Ind. 1899); *United States v. Heth*, 7 U.S. (3 Cranch) 399, 408 (1806) (laws should be applied prospectively unless "the words are too imperious to admit of a different construction").

An oft-cited (and occasionally invoked) exception to the general rule is that remedial statutes—those "intended to cure a defect or mischief that existed in a prior statute" (*Bourbon Mini-Mart, Inc. v. Gast Fuel & Svcs., Inc.*, 783 N.E.2d 253, 260 (Ind. 2003) (retroactive application to certain state environmental laws))—will be applied retroactively to carry out the statute's purpose "unless to do so violates a vested right or constitutional guaranty." *Martin v. State*, 774 N.E.2d 43, 44 (Ind. 2002) (retroactive application where a legislative amendment was an apparent corrective to a judicial decision). In the end, however, legislative intent remains the overriding goal of the retroactivity analysis, just as it is for statutory interpretation more generally. *Bourbon Mini-Mart*, 783 N.E.2d at 260; *Cubel*, 876 N.E.2d at 1120.

The Estate argues that the 2003 Amendment applies to the Dieter-Sawdon judgment because (1) the inter-

pretation that it seeks is not retroactive at all, (2) the language of the Amendment requires retroactive application, and (3) the Amendment was a remedial statute whose purpose requires retroactive application. We examine each argument in turn.

### A. The Estate Seeks a Retroactive Interpretation

The Estate's most ambitious argument is that application of the 2003 Amendment to this case would not be retroactive at all because there was no final judgment at the time that the 2003 Amendment took effect.[5] The final judgment cut-off rule that the Estate proposes, however, is not one that Indiana courts have adopted as a bright line rule in their retroactivity analysis. Rather the retroactivity inquiry centers on whether application of a new rule will "attach[] new legal consequences to events completed before [the law's] enactment." *Landgraf*, 511 U.S. at 269-70; *Stewart v. Marson Constr. Co.*, 191 N.E.2d 320, 321 (Ind. 1963). Plainly, that is what the Estate seeks to do in this case. Prior to the enactment of the 2003 Amendment, a governmental entity was required to "pay all costs and fees incurred by or on behalf of a public employee in defense of [a] claim or suit" (Ind. Code § 34-13-4-1 (2001 supp.)), but the governmental entity did not have to pay a judgment unless it decided that payment was in its best interest. *Id.* Thus, under the

---

[5] As noted above, while the jury returned a verdict against Dieter and Sawdon in May 2002, a final judgment was not entered until after Moffa's second trial in September 2003.

law as it existed at the time that the County elected to defend Dieter and Sawdon, the County had the option not to pay the ensuing judgment.

The 2003 Amendment changed the calculus for the governmental entity. Under the Amendment, once the governmental entity defends (or has the opportunity to do so), it is at least partially on the hook for any subsequent judgment. Had the 2003 Amendment been in effect prior to the trials of Dieter and Sawdon, the County at least could have urged the two to settle. It is no answer to say that the County had the opportunity to defend Dieter and Sawdon on appeal. The point is that the 2003 Amendment "attache[d] new legal consequences to" an event—the trial—that was "completed before [the Amendment's] enactment." *Landgraf*, 511 U.S. at 269-70. After all, there are only limited bases for reversing a jury verdict at the appellate stage, in large part because the facts are construed in favor of the prevailing party. *Tate v. Executive Mgmt. Svcs., Inc.*, 546 F.3d 528, 532 (7th Cir. 2008) ("[W]e will overturn a jury only if we conclude that no rational jury could have found for the [prevailing party].") (quotation marks omitted); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 564 (7th Cir. 2003); see also *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995) (even greater deference for a jury-tried case with "simple issues but highly disputed facts").

Even the cases cited by the Estate to prop up its proposed final judgment rule do not support its argument. For instance, in *Int'l Fidelity Ins. Co. v. State*, 567 N.E.2d 1161, 1164 (Ind. Ct. App. 1991), the Indiana Court

of Appeals held merely that a statute that was amended after a final judgment could not be applied retroactively to the pre-amendment judgment. Similarly in *Speidel v. State*, 386 N.E.2d 180, 181-83 (Ind. Ct. App. 1979), the court held that a 1974 amendment to a statute governing interest owed on judgments was applicable to a judgment obtained in 1975, even though the underlying cause of action accrued before the amendment took effect. Neither case supports the argument that final judgments *qua* final judgments play a special role in the retroactivity analysis. In *Int'l Fidelity*, the fact that the judgment was final seems merely to have made the retroactivity analysis easier. In *Speidel*, the statute in question dealt only with interest *on* final judgments. And while in that case the critical moment for purposes of determining retroactivity was the final judgment, the court's reasoning revealed that it was not adopting a one-size-fits-all approach to retroactivity.[6] 386 N.E.2d at 182-83. Indeed, the cases cited by the Estate do a better job of demonstrating the disutility of bright line rules in the retroactivity analysis than they do of advancing the Estate's case. See also *Peacock v. Drew Mun. Separate Sch. Dist.*, 433 F. Supp. 1072, 1075 (N.D. Miss. 1977) (application of attorney fees provision would be impermissibly retroactive where the

---

[6] Notably, the *Speidel* court distinguished the facts of that case from an earlier case in which the court of appeals concluded that a date related to the *filing* of an action was key for purposes of the retroactivity analysis. *Speidel*, 386 N.E.2d at 182-83 (discussing *Palmer v. State*, 363 N.E.2d 1245, 1248 (Ind. Ct. App. 1977)).

district court "already . . . acted . . . in the first instance" on the substantive claims in the case).

### B.  The Language of the 2003 Amendment Does Not Support the Estate's Argument

The Estate also advances two distinct arguments that the language of the statute explicitly spells out its intended retroactive effect. We are unconvinced.

The Estate first argues that by indemnifying both present and *former* employees for conduct "within the scope of the public employee's employment," the legislature "elucidate[d] the temporal application of the statute" and indicated its intent that the Amendment apply retroactively. Appellant Br. at 29. Temporal yes, retroactive no. Indeed, the code provision by its terms does apply to former public employees who commit civil rights violations within the scope of employment. The natural reading of this provision is that Ind. Code § 34-13-4-1 includes within its purview employees who engage in actionable conduct and then get fired (or quit) before a plaintiff files suit. The plain language is fatal to the Estate's argument; because a plausible alternative construction exists, the Estate's proposed interpretation fails. *Lindh v. Murphy*, 521 U.S. 320, 328 n.4 (1997) (retroactive application of a statute based on its language is appropriate only where the language is "so clear that it [can] sustain only one interpretation"); see also *Sholes v. Sholes*, 760 N.E.2d 156, 159 (Ind. 2001) (stating that courts must respect a statute's plain language and finding no evidence that the legislature used an "unusual or stylized meaning of a

commonly understood word"); *Ind. Bell Tel. Co., Inc. v. Ind. Util. Regulatory Comm'n*, 715 N.E.2d 351, 354-55 (Ind. 1999) (relying on the "plain and obvious meaning" of the words in a public utility statute).[7]

Moreover, the language that the Estate emphasizes has been part of the statute for more than a quarter of a century. See Ind. Code § 34-4-16.7-1 (1976). The 2003 Amendment added only the "defends or has the opportunity to defend" language and mandated indemnification for compensatory damages. The rest of the language had been unchanged for decades.[8] That the Estate leans so heavily on language that predated the Amendment in making its retroactivity argument counsels against our accepting it, for it is difficult to swallow the argument that the legislature intended to give retroactive effect to the 2003 Amendment by resorting to language that already resided in the Indiana Code.

The Estate's second textual argument also relies on reenacted language, and it too falls short of that which is required to gain retroactive effect. According to the Estate, because Section 1 requires indemnification of a public employee who "*is or could be* subject to personal civil liability," it applies to cases that were decided, and in

---

[7] At most the language in Ind. Code § 34-13-4-1 is redundant, as the language related to current and former public employees nearly mirrors, right down to its illustrative examples, the definition of a "public employee" under Indiana law. See Ind. Code § 34-6-2-38.

[8] See *supra* note 2.

which personal civil liability attached, prior to 2003. The logic of the argument appears to be that if liability is predicated on a certain state of affairs—in this case, a public employee being subject to liability—and that state of affairs existed when the Amendment was enacted, then the legislature intended the law to apply in those cases. Appellant Br. at 31 (noting that the General Assembly could have used "shall" to indicate prospective application).

There are many flaws with the Estate's argument. First, it simply ignores the presumption against retroactivity. The legislature's use of a present tense verb, or predicating liability on the existence of a certain state of affairs, does not somehow reverse the presumption against retroactivity. See, *e.g.*, *Bourbon Mini-Mart*, 783 N.E.2d at 259, 262 (conceding that the language of the statute in question, which was worded in the present tense, did "not demonstrate that the Legislature meant for recovery to be retroactive"); *Ind. Dept. of Envtl. Mgmt. v. Med. Disposal Svcs.*, 729 N.E.2d 577, 581 & n.8 (Ind. 2000) (no retroactive effect to a definition); *State ex rel. Ind. State Bd. of Dental Examiners v. Judd*, 554 N.E.2d 829, 831, 832 (Ind. Ct. App. 1990) (denying retroactive effect under circumstances logically equivalent to the Estate's argument); *In re Hershman*, 403 B.R. 597, 601-06 (Bnkr. N.D. Ind. 2009) (same). The Estate cannot overcome the presumption against retroactivity simply by disregarding it.

Nor is the argument rescued by the Estate's invocation of the rule against surplusage, which directs courts to give effect to each word used by the legislature. *Lincoln Nat'l*

*Bank & Trust Co. of Fort Wayne v. Nathan*, 19 N.E.2d 243, 247 (Ind. 1939); *Hatcher v. State*, 762 N.E.2d 189, 192 (Ind. Ct. App. 2002). But see *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (noting that the canon is "sometimes offset by the canon that permits a court to reject words as surplusage if inadvertently inserted or if repugnant to the rest of the statute") (quotation marks omitted). As noted above, Section 34-13-4-1 applies to an employee who (1) is or (2) could be subject to personal civil liability. The Estate argues that, from the moment that the 2003 Amendment was enacted, every public employee *cum* constitutional tortfeasor *could be* subject to personal civil liability. Therefore, in order to avoid violating the rule against surplusage, the phrase "is . . . subject to personal civil liability" must be read to refer to employees who were already liable at the time that the Amendment was enacted.

The problem with the Estate's syllogism is that it ignores both the plain language and the structure of the statutory scheme. See *Sales v. State*, 723 N.E.2d 416, 420 (Ind. 2000); *Ind. Ins. Guar. Ass'n v. Davis*, 768 N.E.2d 902, 904 (Ind. Ct. App. 2002) (cautioning that interpretation should not overemphasize "a strict literal or selective reading of individual words"). Statutory interpretation, courts often remind litigants, is a holistic endeavor. *Trs. of Chi. Truck Drivers, Helpers and Warehouse Workers Union v. Leaseway Transp. Corp.*, 76 F.3d 824, 828 (7th Cir. 1996) (quoting *United States Nat'l Bank of Or. v. Indep. Ins. Agents*, 508 U.S. 439, 454-56 (1993)).

Both the plain language and the structure of the 2003 Amendment reveal plausible, non-retroactive interpreta-

tions. In this case, the Estate urges that "is . . . subject to personal civil liability" means "is liable" or more precisely "was already liable at the date of enactment." But the ordinary meaning of "subject to liability" is that a person is "susceptible to a lawsuit that would result in an adverse judgment . . . [*i.e.,*] *having engaged in conduct* that would make the actor liable for another's injury . . . ." BLACK'S LAW DICTIONARY 1466 (8th ed. 2004) (emphasis added). The phrase "*could* be subject to personal civil liability" indicates only that the General Assembly was attempting to use broad language, perhaps explicitly including the innocent public employee within the statute's ambit—after all, the innocent public employee would not have "engaged in conduct that would make the actor liable for another's injury." *Cf. Vroegh v. J & M Forklift*, 651 N.E.2d 121, 124-25 (Ill. 1995) (one who had not committed a wrongful act was not "subject to liability" for purposes of a contribution statute). In any event, the use of the phrase "is or could be subject to personal civil liability" hardly evinces an unequivocal intent by the General Assembly to hurl its indemnification provision backward in time.

Moreover, the Amendment's structure counsels against the Estate's retroactivity argument. Section 1's language pertaining to public employees who (1) are or (2) could be subject to liability applies to *both* (A) compensatory judgments, for which indemnification is mandatory and necessarily involves a court proceeding, and (B) settlements and punitive damage judgments, which are matters of grace and (in the case of settlements) may be based on discussions that take place prior to the initia-

tion of a lawsuit. In other words, applying the canon against surplusage in light of the statute's structure does not require a retroactive result: "is . . . subject to personal civil liability" plausibly refers to compensatory damages judgments, while "could be subject to personal civil liability" refers to settlements. Again, the existence of a plausible alternative non-retroactive construction is fatal to the Estate's interpretation. See *Lindh*, 521 U.S. at 328 n.4.

In sum, the language to which the Estate points falls far short of the unambiguous language that Indiana courts require for a statute to be applied retroactively. Tellingly, Indiana's legislature has revealed itself more than capable of making its statutes explicitly retroactive—for example, by making a statute's effective date prior to its date of passage (see 2004 Ind. Acts 1548) or stating that the law applies to events that occurred before its enactment (see *Wyrick v. Gentry*, 796 N.E.2d 342, 347, 349 (Ind. Ct. App. 2003) (explaining that a provision that "applie[d] to a will executed before, on, or after July 1, 2003" had retroactive effect)).

Indeed, the General Assembly has shown in the specific context of statutes related to recovery against the government that it knows how to make provisions retroactive when it wants to do so. It did so with the statutory cross reference in Ind. Code § 34-13-4-1, which caps the compensatory damages of the 2003 Amendment at $300,000. See 2004 Ind. Acts 1389, 1548 (damages cap passed on March 16, 2004, retroactive to July 1, 2003). Given the General Assembly's evident acumen in this

realm, it would be particularly inappropriate for us to stretch the language of Ind. Code § 34-13-4-1 and burden it with a construction that was never intended. *Ind. Bell*, 715 N.E.2d at 356 (reasoning that reversing a "conscious choice" of the legislature, as evidenced by its ability to use certain language when it wanted to, would undermine separation of powers). As this Court has reminded litigants before, those who seek "novel applications" of state law "would be better advised to bring their claims in the state courts." *Freeman v. Mayer*, 95 F.3d 569, 574 (7th Cir. 1996).

### C. Even if "Remedial," Applying the 2003 Amendment Retroactively Would Not Further the Purposes of the 2003 Amendment

The Estate also argues that even if not explicitly retroactive, the statute is remedial and therefore should be given retroactive effect. The argument fails for two principal reasons. First, it is doubtful that the 2003 Amendment qualifies as "remedial" as Indiana courts use the term in evaluating retroactivity. Second, giving retroactive effect to the 2003 Amendment would allow one purpose of the Amendment to trump other purposes that are evident from the language and structure of Ind. Code § 34-13-4-1.

The Indiana courts teach that remedial statutes are those that are intended to "cure a defect or mischief that existed in a prior statute." *Martin*, 774 N.E.2d at 44; see also *W.H. Dreves, Inc. v. Oslo Sch. Twp. of Elkhart County*, 28 N.E.2d 252, 254-55 (Ind. 1940) (determining whether a

statute is remedial itself presents a question of legislative intent). If a statute is remedial, then a court will apply the statute retroactively "to carry out [its] legislative purpose unless to do so violates a vested right or constitutional guaranty." *Martin*, 774 N.E.2d at 44. However, retroactive application of remedial statutes remains the exception rather than the rule in Indiana (*Pelley*, 828 N.E.2d at 919-20), and such application will be denied absent "strong and compelling reasons." *Gosnell v. Ind. Soft Water Svc., Inc.*, 503 N.E.2d 879, 880 (Ind. 1987) (superseded by statute on other grounds); *Walsman v. State*, 855 N.E.2d 645, 650 (Ind. Ct. App. 2006); *Sack v. Estate of Hubbell*, 613 N.E.2d 868, 869-70 (Ind. Ct. App. 1993).

As a threshold matter, it is not clear to us that the 2003 Amendment is the sort of enactment that Indiana courts have construed as remedial for purposes of the retroactivity analysis. Statutes that merely clarify legislative intent (*Martin*, 774 N.E.2d at 45), or which are passed on the heels of (and abrogate) a judicial decision (*Hurst v. State*, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008); *Wyrick*, 796 N.E.2d at 346-47), or which are modeled after federal laws long understood to have retroactive effect (*Bourbon Mini-Mart*, 783 N.E.2d at 260-61), all have been held to apply retroactively by Indiana courts.[9] None of these situations

---

[9] It is true that Indiana courts also have applied statutes retroactively where they provided a new remedy for an existing right or a modification of procedure. See, *e.g., Cardinal Indus., Inc. v. Schwartz*, 483 N.E.2d 458, 460 (Ind. Ct. App. 1985).

(continued...)

are present in this case. While it is true that the 2003 Amendment altered the state's long-standing regime of discretionary indemnification, making it—in some instances—mandatory, the mere alteration of a statutory scheme, even if significant, does not by itself support the conclusion that a statute is remedial. *Ind. Dept. of State Revenue, Inheritance Tax Div.*, 735 N.E.2d 340, 345 (Ind. Tax. 2000) (denying retroactive application to sizable expansion of the estate tax exemption).

And if the purpose of compensating victims is, as we conclude, one among many purposes of the statute, then denying a retroactive application does not necessarily frustrate the purposes of the legislature. See *Bourbon Mini-Mart*, 783 N.E.2d at 263 (allowing retroactive application in part because that would "best achieve" the "Legislature's intent"); see also William N. Eskridge, Jr., et al., LEGISLATION AND STATUTORY INTERPRETATION 228-30 (2d ed. 2006)

---

[9] (...continued)

However, we know of no authority allowing retroactive application of a statute that imposed a new remedy on a person who was not already liable. In contrast, courts have concluded that statutes increasing liability were not intended to have retroactive effect. *Stewart v. Marson Constr. Corp.*, 191 N.E.2d 320, 321 (Ind. 1963) (citing *Herrick v. Sayler*, 245 F.2d 171, 174 (7th Cir. 1957)); *cf. Malone v. Conner*, 189 N.E.2d 590, 591 (Ind. Ct. App. 1963), *abrogated on other grounds by Martin v. State*, 774 N.E.2d 43, 44. n.1 (Ind. 2002). See also *Hyder v. Jones*, 245 S.E.2d 123, 125 (S.C. 1978) (legislation providing new right of action where previously there was none was not to be applied retroactively).

(discussing interpretive difficulties that may arise when statutes have multiple purposes).

Indeed, the language and structure of Ind. Code § 34-13-4-1 reveal that some of the purposes of this amended provision would be *frustrated* by giving retroactive effect to the 2003 Amendment. To be sure, one purpose of the Amendment was to allow constitutional tort victims to recover from governmental entities for the wrongs of their employees. However, the text and structure of the 2003 Amendment evince other concerns as well. Protection of the government fisc, for instance, is a purpose whose importance is plain from the language of Ind. Code § 34-13-4-1. The code limits (by cross-reference) indemnification by a governmental entity for compensatory damages to $300,000. "Liability limitations on a person's recovery against the state or a political subdivision are designed to preserve public treasuries, protect against the possibility of unusually large recoveries, and discourage excessive litigation." *In re Train Collision at Gary, Ind. on Jan. 18, 1993*, 654 N.E.2d 1137, 1146 (Ind. Ct. App. 1995).

The Estate's interpretation would threaten the fiscal health of governmental entities by opening them up to twenty years' liability, because that is how long a person has to enforce an Indiana judgment. Ind. Code § 34-11-2-12. Making the entities suddenly responsible for liability imposed during the first term of the Reagan Administration would neither preserve the treasury nor discourage excessive litigation. And, of course, that the Estate seeks such a sweeping interpretation based on modest statutory changes itself counsels against the conclusion that the

General Assembly intended the result. We presume, to paraphrase the Supreme Court, that the General Assembly "does not alter the fundamental details of a [statutory indemnification] scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

The Estate's interpretation would frustrate another purpose of the 2003 Amendment, as well. We have already discussed how the Amendment's structure changed the equation for governmental entities when their employees are faced with lawsuits. The Amendment allows those entities to decide, *ex ante*, whether they would rather face the possibility of a $300,000 indemnification or accept a settlement (presumably for less). It cannot be gainsaid that for at least some number of cases in the last twenty years, a governmental entity—if faced with that choice—would have entered into settlements for less than $300,000. Retroactive application of the 2003 Amendment necessarily denies governmental entities that choice and may result in a governmental entity owing more than it would have if the scheme had been allowed to function as the amended statute anticipates.

Applying the provision prospectively compensates victims of constitutional torts, protects the government's fiscal health, and allows governmental entities to make calculated choices about their litigation strategies. The modest changes wrought by the 2003 Amendment do not support the notion that compensating victims was intended to trump the other purposes embodied in the Amendment.

### D. The County's Defense of Dieter and Sawdon Does Not Alter the Analysis

Finally, we note briefly the Estate's argument that the County satisfied the "defends or has the opportunity to defend" statutory predicate. The County's satisfaction of the 2003 Amendment's requirements, however, would matter only if we concluded that the statute applied retroactively.

## IV. Conclusion

The beating death of Christopher Moreland reminds us, as this Court recently put it, that "[t]he distance between civilization and barbarity, and the time needed to pass from one state to the other, is depressingly short." *United States v. Bartlett*, 567 F.3d 901, 903 (7th Cir. 2009). When public employees reveal through their actions exactly how short that distance is, they necessarily erode popular confidence in public institutions. Nevertheless, absent the predicates for direct legal liability against a governmental entity, determining how to restore that confidence is a matter of public policy rather than judicial construction. St. Joseph County, Indiana, may choose to compensate the Estate for the conduct of its officers, but because the Indiana General Assembly did not make its amendment to Ind. Code. § 34-13-4-1 retroactive, it is not a choice that we have the authority to impose. The order of the district court is

AFFIRMED.