In the

# United States Court of Appeals

### For the Seventh Circuit

No. 17-2609

SCOTT ROBINETT,

*Defendant-Appellant,*

*v.*

CITY OF INDIANAPOLIS,

*Defendant-Appellee.*

Appeal from the United States District Court for
the Southern District of Indiana, Indianapolis Division.
No. 1:14-cv-01885-RLY-DML — **Richard L. Young**, *Judge.*

ARGUED FEBRUARY 7, 2018 — DECIDED JULY 9, 2018

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Scott Robinett and the City of Indianapolis were codefendants in a civil-rights action. Robinett, a police officer, was accused of failing to intervene in an escalating domestic dispute between two fellow police officers. The dispute ended violently in a tragic murder-suicide, and the murder victim's estate asserted claims against Robinett and the City under 42 U.S.C. § 1983 and Indiana law. They won the case; the district judge rejected

the estate's claims and entered summary judgment for the defendants. Robinett then asked the judge to order the City to pay his attorney's fees and costs under Indiana Code § 34-13-4-1, a public-employee indemnification statute. The judge denied the motion and Robinett appeals.

We affirm. The indemnification statute requires a public employer to pay defense costs in a civil-rights action against an employee only if the employee was acting within the scope of his employment when he committed the act or omission in question. A mere allegation to that effect does not trigger the indemnification obligation. The judge held that Robinett acted outside the scope of his employment during the events at issue here; that is, he acted as a private person, not a police officer. Robinett does not challenge that factual determination, so his claim for costs and fees fails.

## I. Background

Ryan Anders and Kimberlee Carmack were Indianapolis police officers. They married in October 2010 and divorced three years later. Anders soon launched an alarming campaign of harassment and intimidation, stalking Carmack while she was on police runs and calling her incessantly throughout the day. He once pursued Carmack in his police car and cornered her in a parking lot. Changing tactics, he threatened to publish naked pictures of Carmack and publicly disclose her use of anxiety medication if she did not continue to have sex with him. Carmack gave in to this demand and others, fearing that if she refused, Anders would kill her.

The police department eventually got wind of these events and opened a criminal investigation against Anders

for stalking, rape, battery, and residential entry. The department placed a GPS tracking device on his car with a warning mechanism to alert Carmack if he passed nearby. The department also obtained search warrants for Anders's home, person, and effects. Carmack began spending nights away from home so Anders could not track her whereabouts. At the department's suggestion, she also secured a protective order against Anders.

These efforts were insufficient to protect her from her ex-husband. Anders eventually discovered the GPS device and called Robinett—his friend and fellow police officer—and asked to meet in a nearby church parking lot. Robinett arrived at that location and found Anders kneeling behind the trunk of his car. Anders pointed to an object on the bumper and asked if it was a tracking device. Robinett confirmed that it was and Anders then drove away. Robinett did not tell investigators that Anders had discovered the GPS device. Ten days later Anders drove to Carmack's house and killed her and himself. She was not alerted to his approach because he drove his grandmother's car.

Carmack's estate sued the City, Robinett, and other officials alleging that they violated her rights under the Fourteenth Amendment and Indiana law. The claims against Robinett were premised on a theory of wrongful failure to intervene to protect Carmack. The judge rejected the estate's claims and entered summary judgment in favor of the defendants. As relevant to this appeal, the judge held that Robinett was not liable for a constitutional violation under § 1983 because he did not act under color of state law during the events in question. The judge also held that the City was not vicariously liable on the state tort claims because

Robinett acted outside the scope of his employment at all relevant times.

Several months later Robinett asked the court to order the City to pay his attorney's fees and costs under § 34-13-4-1, an Indiana public-employee indemnification statute. The judge denied the motion, ruling that the statute obligates public employers to reimburse an employee's defense costs in civil-rights litigation only when the employee acted within the scope of his employment when he committed the acts or omissions in question. Because the claims against Robinett arose out of his acts or omissions as a private person, not a police officer, the judge held that he was not entitled to a publicly funded defense.

## II. Discussion

Robinett does not challenge the judge's ruling that the estate's claims rested entirely on acts or omissions he committed outside the scope of his employment. He contests only the judge's interpretation of the public-employee indemnification statute. We review this legal question de novo. *United States v. Crisp*, 820 F.3d 910, 913 (7th Cir. 2016).

The statute provides:

> If a present or former public employee … is or could be subject to personal civil liability *for a loss occurring because of a noncriminal act or omission within the scope of the public employee's employment* which violates the civil rights laws of the United States, … [the public employer] shall … pay:
>
> > (1) any judgment (other than for punitive damages) of the claim or suit … .

IND. CODE § 34-13-4-1 (emphasis added). The use of the word "shall" signifies that indemnification is mandatory for a compensatory-damages judgment, assuming all other requirements are satisfied. The statute goes on to give public employers the option to indemnify their employees for "any judgment for punitive damages, compromise, or settlement" *if* the payment "is in the best interest of the governmental entity." *Id.* That is, paying a settlement or a punitive-damages judgment from the public fisc is *discretionary*, again assuming the other statutory requirements are met.

Whether mandatory or discretionary, indemnification is allowed only when "the governmental entity defends or has the opportunity to defend the public employee." *Id.* Finally, the statute provides that the public employer "shall also pay all costs and fees incurred by or on behalf of a public employee in defense of the claim or suit." *Id.*

As Robinett reads this statutory language, indemnification of defense costs is required whenever a public employee is *alleged* to have been acting within the scope of his employment, whether or not that turns out to be true. On this interpretation, indemnification does not depend on a determination that the public employee was, in fact, acting within the scope of his employment at the time of the events in question in the underlying suit. Rather, a public employer might be on the hook for defense costs *even when* the employee was *not* acting within the scope of his employment. In other words, the actual facts do not matter; a "scope of employment" allegation is sufficient to trigger indemnification of defense costs even where (as here) the court finds that the employee was acting *outside* the scope of his employment at the time in question.

That interpretation is foreclosed by the plain statutory text. After setting out when judgments and settlements must or may be indemnified, the statute concludes: "The governmental entity shall *also* pay all costs and fees incurred by or on behalf of a public employee in defense of the claim or suit." *Id.* (emphasis added). Read naturally, the word "also" tells us that indemnification of defense costs is subject to the same terms as indemnification of a judgment or settlement: it is available only in a civil-rights action when the government defends or has the opportunity to defend and the public employee was acting within the scope of his employment at the time of the act or omission in question. The scope-of-employment requirement extends throughout the indemnification provision and limits when defense costs must be paid. There is no textual justification to wall off costs and fees from the rest of the statute.

Our caselaw bears out this understanding of the indemnification statute. In *Kapitan v. City of Gary*, 12 F.3d 678 (7th Cir. 1993), we addressed an earlier version of this statute that made indemnification of the underlying judgment discretionary in all cases but nonetheless included the same defense-cost language. We did not hold that the duty to pay defense costs could be separated from the duty to indemnify. Instead we concluded that "payment of costs and legal fees follows from the decision to indemnify the substantive liability; a governmental entity that decides not to indemnify also need not pay these ancillary expenses." *Id.* at 680. With identical language here, the same tethering principle should apply. The duty to pay defense costs is triggered by whatever triggers the underlying indemnification obligation. That the public employee acted within the scope of his employment is therefore a necessary condition for both.

A final textual clue reinforces this interpretation. The indemnification statute requires the government to pay "all costs and fees incurred by or on behalf of a public employee in defense of *the claim or suit*." § 34-13-4-1 (emphasis added). The claim or suit, in turn, must refer to the only claim contemplated by the statute: a claim of "personal civil liability for a loss occurring because of a noncriminal act or omission *within the scope of the public employee's employment* which violates the civil rights laws of the United States." *Id.* (emphasis added). Footing the defense bill is therefore limited to a narrowed universe of claims in which the public employee actually acted within the scope of his employment. Because Robinett does not question the judge's finding that he acted outside the scope of his employment when he failed to intervene to protect Carmack, the City has no obligation to reimburse his legal fees or costs.

Robinett challenges this conclusion on two grounds. He first argues that it inappropriately ties the public employer's defense-cost obligation to a final liability judgment against a public employee. That, he says, would force a public employee to fund his own successful defense even when the act or omission that generated the lawsuit was within the scope of his employment.

Not so. Indemnification of defense costs doesn't require a liability judgment against the public employee. If the employee was acting within the scope of his employment at the relevant time, he has a valid claim for reimbursement of his defense costs. The public employer's obligations to indemnify a judgment and/or pay defense costs *both* depend on the same prerequisite: the employee must have been acting within the scope of his employment when he committed the

act or omission that forms the basis of the claim. But nothing in the statute suggests that ultimate liability is a prerequisite to payment of defense costs.

In fact, the opposite is true. Indemnity is provided if a public employee "is *or could be* subject to personal civil liability." *Id.* (emphasis added). This language eliminates actual liability as a prerequisite to indemnification of defense costs, thereby "including the innocent public employee within the statute's ambit." *Estate of Moreland v. Dieter*, 576 F.3d 691, 699 (7th Cir. 2009). Put slightly differently, liability need only be possible, while an act or omission "within the scope of the public employee's employment" is required before a public employer may be held responsible for paying the cost of its employee's defense. § 34-13-4-1. This limits a public employer's indemnification obligation to employees who were actually doing the public's business and excludes those who were out on a frolic. That makes perfect sense.

Robinett's second line of argument rests on an unlikely hypothetical. He contends that our interpretation of the scope-of-employment requirement would incentivize a public employee to secretly take a default judgment in a civil-rights suit instead of notifying the governmental employer and asking it to litigate in his defense. That employee could then wield the default judgment as an issue-preclusive sword in a follow-on proceeding for indemnification because the scope-of-employment element would have been conclusively established. That would leave the public employer on the hook for fees and a judgment without ever having had the opportunity to present its case.

The concern is overblown; the indemnification statute already protects against this hypothetical. The duty to indemnify arises only when the public employer "defends or has the opportunity to defend" the public employee. *Id.* Moreover, Robinett's argument misrepresents how issue preclusion would work in this type of case. While a default judgment is given full issue-preclusive effect, *see Eichenberger v. Eichenberger*, 743 N.E.2d 370, 374 (Ind. Ct. App. 2001), it disposes only of those issues "necessarily adjudicated in a former lawsuit," *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012). Scope of employment would never be "necessarily" adjudicated in the hypothetical strategic default Robinett envisions. The scheme is premised on concealing the civil-rights action from the governmental employer and then bamboozling it later. But the only way scope of employment would come up is if the plaintiff sought to make the governmental entity vicariously liable in tort, like the estate did here on the state-law claims. That necessarily requires the plaintiff to join the governmental unit as a defendant. Strategic default is thus incapable of rendering a final and binding judgment on a scope-of-employment issue.

What a strategic default *could* resolve is whether a civil-rights defendant acted under color of state law for purposes of § 1983. Robinett argues that there is no effective difference between this requirement and scope of employment. That's incorrect. While the two concepts are "closely related," they are "not identical." *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997); *see also Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987) ("We do not confuse the 'under color of state law' element of section 1983 with the 'scope of employment' requirement of the indemnification statute."). An employee

acts within the scope of his employment when his conduct is "of the same general nature as that authorized by the public employer" or "incidental to the conduct authorized by the employer." *Katz-Crank v. Haskett*, 843 F.3d 641, 651 (7th Cir. 2016) (internal quotation marks omitted). An employee can act under color of state law, meanwhile, even when he "misuse[s]" state power. *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001). That is to say, he can be held liable for conduct beyond what "the State in fact authorized." *Screws v. United States*, 325 U.S. 91, 111 (1945).

Our cases underscore the difference between "scope of employment" and "under color of state law." In *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980), for example, a state-court judge undertook to singlehandedly prosecute a criminal case. That was obviously well outside his official job duties, but we found nonetheless that he acted under color of state law. We reasoned that "[a]ction taken by a state official who is cloaked with official power and who purports to be acting under color of official right … is taken under color of state law whether or not the action is in fact in excess of the authority actually delegated to the official." *Id.* at 1236; *see also Wilson v. Price*, 624 F.3d 389, 394 (7th Cir. 2010) (reaffirming this principle). "Under color of state law" thus extended to conduct far beyond the scope of the judge's employment. No doubt there are some cases in which the two standards will align, but for issue-preclusion purposes, it is enough to note that one does not inexorably lead to the other.

In short, the statute protects public employees who act within the scope of their employment from having to foot the bill for defense costs in a civil-rights action regardless of

the outcome. Win or lose, however, the employee must have been acting within the scope of his employment; a mere allegation to that effect is not enough to put the public employer on the hook for the cost of the defense. Both the statutory text and precedent make this clear.

The judge found that Robinett acted as a private person, not a police officer, when he failed to come to Carmack's aid. Robinett doesn't contest that determination. Because he was not acting within the scope of his public employment, the City need not shoulder the financial burden of his defense.

AFFIRMED.

ROVNER, *Circuit Judge*, dissenting. I agree with my colleagues that Robinett's entitlement to indemnification of his attorney's fees depends on the plain language of the statute. But in my view, the plain language of the statute clearly compels the government employer to cover Robinett's fees in this instance. Our review of the district court's interpretation of the Indiana statute is *de novo*. *Estate of Moreland v. Dieter*, 576 F.3d 691, 695 (7th Cir. 2009). "[T]he words in a statute must be given their plain and ordinary meaning unless otherwise indicated by the statute." *Cubel v. Cubel*, 876 N.E.2d 1117, 1120 (Ind. 2007). Moreover, "[t]he statute should be examined as a whole, avoiding both excessive reliance on strict literal meaning and selective reading of individual words." *Id*.

In light of that standard, it is best to begin by examining the statutory language in full. The code provides in its entirety:

> Sec. 1. If a present or former public employee, including a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity, is or could be subject to personal civil liability for a loss occurring because of a noncriminal act or omission within the scope of the public employee's employment which violates the civil rights laws of the United States, the governmental entity (when the governmental entity defends or has the opportunity to defend the public employee) shall, subject to IC 34-13-3-4, IC 34-13-3-14, IC 34-13-3-15, and IC 34-13-3-16, pay:

(1) any judgment (other than for puni-
tive damages) of the claim or suit; or

(2) any judgment for punitive damages,
compromise, or settlement of the claim
or suit if:

(A) the governor, in the case of a
claim or suit against a state em-
ployee; or

(B) the governing body of the po-
litical subdivision, in the case of a
claim or suit against an employee
of a political subdivision;

determines that paying the judgment for puni-
tive damages, compromise, or settlement is in
the best interest of the governmental entity.
The governmental entity shall also pay all costs
and fees incurred by or on behalf of a public
employee in defense of the claim or suit.

Ind. Code 34-13-4-1.[1]

When presented as a whole, it is easy to see that the stat-
ute applies certain conditions precedent to (1) the mandate
to pay a judgment (other than punitive damages); and (2) the
optional payment of punitive damages, or compromise or
settlement of the claim or suit (hereafter "punitive damag-
es"). Before a governmental unit will pay a non-punitive
judgment or punitive damages for the act of a public em-

---

[1] IC 34-13-3-4, IC 34-13-3-14, IC 34-13-3-15, and IC 34-13-3-16
are not relevant here.

ployee who "is or could be subject to personal civil liability," the loss must have occurred (1) because of a non-criminal act or omission; (2) within the scope of the public employee's employment; and (3) in violation of the civil rights laws of the United States. Once these conditions are met, indemnification of the employee for a compensatory damages judgment is mandatory, and for punitive damages is subject to further conditions (presented in subsections (2)(A) and (B)).

Set apart from these conditions precedent is the final obligation of the governmental entity towards its employee who "is or could be subject to personal civil liability," namely, the duty to "also pay all costs and fees incurred by or on behalf of a public employee in defense of the claim or suit." Had the legislature intended to impose the same conditions precedent on the obligation to pay costs and fees that it did on the duty to pay damages, it would have listed fees and costs as subsection (3) in its enumeration of amounts to be covered by the governmental entity. It did not. It listed the duty separately and broadly, without similar limitations.

The majority hangs its interpretation on the word "also," a rather heavy load for such an unassuming word. In this context, where it would have been so easy to list fees and costs under a third enumeration, making clear that the conditions precedent applied to that particular obligation, I find it too onerous a burden for the word "also" to carry. "Also" may simply mean "in addition; too; besides; as well." Webster's Unabridged Dictionary of the English Language, RHR Press (2001). And in light of the structure of the statute, that is the more natural reading. My colleagues emphasize an alternate meaning of the word "also"—one connoting "and subject to the same conditions set forth previously." This

reading fails to analyze the statute as a whole and instead employs a "selective reading of individual words," an approach to statutory interpretation that the Indiana Supreme Court has expressly rejected. *Cubel*, 876 N.E.2d at 1120. The majority also says that "[t]here is no textual justification to wall off costs and fees from the rest of the statute." But there is: the fees provision comes not as the third subsection, but after a period, a "full stop," as the British say.

By setting out this obligation separately, the legislature did a perfectly natural thing: it took up the burden of covering costs and fees for representing public employees who are hauled into court because of their public employment, as happened here. And fees are paid not only for the guilty employee but also for the innocent, the person who is sued under the civil rights laws solely because of his public employment, who "is **or could be** subject to personal civil liability." The language employed here is similar to that used in insurance policies where the insurer's duty to defend is more broad than its duty to indemnify for damages. *See e.g.*, *Home Federal Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 730–31 (7th Cir. 2012) (finding a duty to defend in an insurance policy that covers not only actions to enforce liens but "attempted enforcement" of a lien as well). In such cases, the "duty to defend depends on what the claimant alleges, not the ultimate merit or lack of merit of the claim." 695 F.3d at 731. That the employee here successfully defended on the ground that he was not acting under color of state law or within the scope of his public employment is irrelevant. What matters is that he was sued as a public employee who "**could be**" subject to liability under a statute that applies only to public employees.

His defense, by the way, also benefitted his public em-
ployer, who would have been on the hook at least for any
compensatory damages and possibly for punitive damages
had the plaintiff been successful. Nothing in the statute
ranks defenses. Robinett was found not liable because he
successfully convinced a court that he was not acting under
color of state law, but he well could have been liable. The
color-of-law analysis in this case is a closer call than it ap-
pears at first glance. Anders went to Robinett not only as a
friend but as a person who could identify a police-placed
tracking device for what it was. And Robinett responded us-
ing knowledge that he likely gained as a police officer, con-
firming that the device was what Anders suspected it to be.
Robinett even directed Anders to place the device back on
his car and to leave his former wife (who had a protective
order) alone, acts a police officer might well take in the scope
of his employment and under color of state law. Granted, a
competent police officer who was fully aware of the situa-
tion would also have alerted the department that Anders
knew he was being tracked and had the ability to remove the
device or otherwise evade detection. In any case, the ques-
tions of scope of employment and color of state law required
litigation through discovery and all the way to summary
judgment in this case, subjecting Robinett to extensive attor-
ney's fees solely because he was a public employee. This is
just the type of case the legislature likely meant to cover
with its promise of indemnification for fees for its public
employees.

Neither *Kapitan* nor *Estate of Moreland* support the read-
ing suggested by the majority. *Kapitan* interpreted a prior
version of the statute that made indemnification of the
judgment entirely voluntary. Where the duty to pay the

judgment was voluntary, we said only that, "[a]s we read the statute, payment of costs and legal fees follows from the decision to indemnify the substantive liability; a governmental entity that decides not to indemnify also need not pay these ancillary expenses." *Kapitan v. City of Gary, Ind.*, 12 F.3d 678, 680 (7th Cir. 1993). The statute now mandates indemnification of non-punitive damages. Nothing in *Kapitan* addressed the issue here of whether fees are covered only for acts taken within the scope of employment and not for acts **alleged** but not successfully proved to be taken within that scope. *Estate of Moreland* actually supports the reading that I suggest, finding that the "could be subject to personal civil liability" language covers innocent employees who successfully defend claims. *Estate of Moreland*, 576 F.3d at 699.

Robinett's successful defense of this claim benefitted the City of Indianapolis to Robinett's detriment. The record reveals that Robinett held a second job at the local Olive Garden restaurant. Whatever this suggests about the pay scale for Indianapolis police officers, it tells us that Robinett is probably ill-equipped to pay more than $20,000 in attorney's fees and costs that he incurred defending himself against the civil rights charges leveled against him as a police officer. The plain language of the statute directs the City of Indianapolis to indemnify Robinett for the fees he incurred here. I respectfully dissent.